

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-21-2001

# USA v. Nappi

Precedential or Non-Precedential:

Docket 99-6126

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

## Recommended Citation

"USA v. Nappi" (2001). *2001 Decisions.* Paper 56.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/56

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 21, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-6126

UNITED STATES OF AMERICA

v.

ROBERT TEQUAN NAPPI,
a/k/a QUAN NAPPI,
a/k/a KEITH WADE
        Robert Tequan Nappi,
        Appellant

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 98-cr-00728)
District Judge: Honorable Katharine S. Hayden

Argued November 30, 2000

Before: BECKER, Chief Judge, RENDELL, and
MAGILL*, Circuit Judges

(Filed: March 21, 2001)

_____
* Hon. Frank J. Magill, Senior Judge of the United States Court of
Appeals for the Eighth Circuit, sitting by designation.

David A. Holman, Esq. [ARGUED]
Chester M. Keller, Esq.
Office of Federal Public Defender
972 Broad Street
Newark, NJ 07102

 Counsel for Appellant

Shawna H. Yen, Esq. [ARGUED]
George S. Leone, Esq.
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ 07102

 Counsel for Appellee

OPINION OF THE COURT

RENDELL, Circuit Judge.

I. INTRODUCTION

Appellant Robert Tequan Nappi ("Nappi") challenges his federal sentence of 105 months' imprisonment, claiming that it was improperly predicated on factual information contained in a state presentence report ("state PSI") that was not presented to him or his attorney prior to, or during, the sentencing hearing, and on which he had no opportunity to comment prior to the District Court's imposing sentence. He argues that Federal Rule of Criminal Procedure 32(c)(1) required the District Court to provide him with the state PSI prior to the sentencing hearing so as to afford him a meaningful opportunity to comment on the information contained therein befor e the Court imposed its sentence.

It is undisputed that Nappi did not object to the Court's reliance upon the state PSI either during the sentencing hearing itself or in his post-sentencing submission. We, therefore, apply a "plain error" standard of review to the District Court's violation of Rule 32(c)(1). While we agree with Nappi that the Court violated Rule 32(c)(1), for the reasons that follow, we find that he has not met his burden

of establishing that the error affected "substantial rights,"—i.e., that there was any prejudice resulting from the Court's error. Accordingly, we will affirm the District Court's sentencing order.

II. FACTS and PROCEEDINGS

As Nappi's appeal focuses exclusively on the pr opriety of his sentence, we need only briefly discuss the facts. Nappi pled guilty to one count of possession of a fir earm by a convicted felon in violation of 18 U.S.C. S 922(g)(1). The federal PSI prepared by the Probation Office outlined Nappi's criminal history, but provided limited information with respect to his juvenile recor d. The section entitled "Juvenile Adjudications" listed five juvenile adjudications, and provided for each of them: (1) the date of Nappi's arrest; (2) the specific charges filed against him; (3) the date of sentencing and the disposition; and (4) Nappi's age at the time of the crimes. It stated, however, that "[t]he details for these juvenile cases are not available." Fed. PSI at 6-7. Under the heading "Other Juvenile Matters," the federal PSI further noted:

> In addition to the above-captioned juvenile convictions, between June 1986 and June 1994, Essex County authorities apprehended the defendant on 15 occasions for burglary, lewdness, assault, violation of probation, robbery, criminal mischief, receiving stolen property and resisting arrest. The charges for these arrests were dismissed in the Essex County Juvenile Court of Newark, New Jersey.

Id. at 7.

At the outset of the sentencing hearing, the Court asked counsel if he had reviewed the federal PSI and if there was anything further that needed to be addressed. Defense counsel acknowledged that he read it and stated that he had no objections to its contents. Defense counsel then argued that Nappi should be sentenced to 84 months' imprisonment, which was the minimum sentence within the applicable Guideline range of 84-105 months. After the Court afforded Nappi his right of allocution, it proceeded to impose its sentence. Because of its significance, we recount

3

the relevant portions of the Court's sentencing pronouncement:

> [T]he calculation [of the criminal history points] demonstrates that Mr. Nappi has a number of criminal history points which put him into criminal history category 5 and expose him to a sentence of 84 to 105 months. It is my job as the Judge now to decide wher e in that range Mr. Nappi should be sentenced. . . . 84 to 105 months, as we all know, is a 21 month difference which is a sizeable range. And as I demonstrated before, the exposure is considerably higher than would otherwise be the case on an of fense level of 23 because of his criminal history. So I look to the nature of the criminal offenses and as I previously observed, Mr. Nappi has been in the criminal justice system since his first arrest at age 10.

> I asked probation to share with me some of the earlier Presentence Reports that were written regarding Mr. Nappi. . . . [In connection with a 1995 arr est] a [state] presentence report was prepar ed that set forth Mr. Nappi's juvenile history, which as indicated began in 1986 with an arrest for burglary and criminal mischief that was 6/21/86, within days of his 10th birthday. Thereafter, there were arr ests for unlawful taking and means of conveyance back sometime between `86 and `89, and the next guilty [juvenile adjudication] was in March of `90, after an arrest in October of `89 for theft, criminal mischief and possession of burglary tools. . . . Six months after that based on an arrest, the month before that [juvenile adjudication] for r obbery, Mr. Nappi was sentenced to one year probation. Again, we are still looking at his juvenile history.

App. at 29. Continuing, the Court then consider ed every contact Nappi had with the criminal justice system between 1991 and 1994, including his history of dismissed juvenile offenses, and concluded:

> I go through in somewhat painful detail the juvenile history to demonstrate another painful fact, that is, Mr. Nappi has consistently been involved in the criminal justice system as either an arrestee or a––a juvenile

4

delinquent or a convicted felon since the age of ten with hardly any interruptions except for those periods of time when he has been incarcerated.

Id. at 30. The Court then considered his adult criminal history, and commented that Nappi had "been arr ested as an adult offender and ultimately convicted for criminal offense[s] every year since he tur ned 13, except for the period between February 1995 and February 1998 when he was incarcerated." Id. The Court r emarked: "What I have is a history of violent acts and patent recidivism and it was that, that I must look at in terms of sentencing Mr. Nappi, in the principal way given [by] the discr etion afforded to the Court by the Sentencing Guidelines." Id. at 31. After voicing its "concern that whatever this system of fers by way of leniency or a second chance Mr. Nappi has pushed aside" and noting that it "must consider that as well in terms of the discretion afforded under the Guidelines," the Court imposed its sentence of 105 months' imprisonment, the maximum sentence within the Guideline range. Id.  at 32. Throughout the Court's lengthy pronouncement, defense counsel did not object to the Court's reliance upon the state PSI.

After imposing sentence, the Court asked if ther e was "anything further" to add to the matter of sentencing. Again, defense counsel lodged no objection to the Court's reliance upon the state PSI. Subsequently, Nappi filed a post-sentencing memorandum, asking the Court to resentence him so that his federal sentence would run concurrently with an undischarged state term of imprisonment pursuant to U.S.S.G. S 5G1.3(c). However, defense counsel did not seek resentencing based on the grounds he now asserts on appeal--namely, that the District Court improperly relied on the undisclosed state PSI in violation of Rule 32(c)(1).

By Order of January 4, 2000, the District Court amended the judgment of conviction to reflect that Nappi's sentence of 105 months "shall run partially concurr ently" to the unexpired state sentence. Nappi filed a timely notice of appeal.

5

## III. DISCUSSION

We have jurisdiction over this appeal pursuant to both 28 U.S.C. S 1291 and 18 U.S.C. S 3742(a)(1). Because Nappi did not lodge an objection at the sentencing hearing, we review the District Court's failure to comply with Rule 32(c)(1) for plain error. Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 732 (1993); United States v. Stevens, 223 F.3d 239, 242 (3d Cir . 2000), cert. denied, 121 S.Ct. 1157 (2001); see also United States v. Mangone, 105 F.3d 29, 35 (1st Cir. 1997) (stating that court of appeals applies plain error standard of review to contention that district court violated Fed. R. Crim. P. 32(c)(1) by failing to give adequate notice and opportunity to comment on court's upward departure where no objection was made in District Court). As the Supreme Court explained in Olano, under the plain error standard of Rule 52(b), we may vacate a sentence and remand for resentencing only if we find that (1) an error was committed; (2) the err or was plain, that is, it is "clear" and "obvious;" and (3) the error "affected [the defendant's] substantial rights." Olano , 507 U.S. at 734; Stevens, 223 F.3d at 242. This requires an assessment of the gravity of the error in the context of the proceedings. See Johnson v. United States, 520 U.S. 461, 469 (1997); see also United States v. Young, 470 U.S. 1, 16 (1985) (stating that in evaluating whether the prosecutor's improper comments constituted plain error that seriously affected the fairness of the proceedings, the Court must view the statements or conduct "in context").

In most cases, to affect a defendant's "substantial rights," the error must have been "prejudicial," i.e., it "must have affected the outcome of the district court pr oceedings." Olano, 507 U.S. at 734. Under plain error r eview, the defendant rather than the government bears the burden of persuasion with respect to prejudice. Id. Finally, even where plain error exists, "the Court of Appeals has authority to order correction, but is not required to do so." Id. at 735. We will correct a plain error only if it " `seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.' " Stevens, 223 F.3d at 242-43 n.4 (quoting Olano, 507 U.S. at 732); see also United States v. Retos, 25 F.3d 1220, 1229 (3d Cir . 1994) (same).

6

On appeal, Nappi argues that the District Court committed plain error requiring us to vacate his sentence and remand for resentencing.1  He further claims that the error affected his "substantial rights" because the Court sentenced him to the maximum sentence within the Guideline range. Finally, he urges that this case is one in which we should exercise our discretion to correct the error despite his failure to object in the District Court because the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." See Olano, 507 U.S. at 736. The government responds that the err or was not plain and that Nappi's substantial rights were not af fected because he has not shown how he was prejudiced by his lack of opportunity to comment on the state PSI.

A.

Nappi contends that the District Court erred by relying upon the state PSI without providing a copy to counsel prior to the sentencing proceeding, and without giving counsel any opportunity to comment on it prior to imposing sentence. Specifically, Nappi claims that the Court violated Rule 32(c)(1) because it entitles counsel for the defendant and the government, at the sentencing hearing, to an "opportunity to comment on . . . matters r elating to the appropriate sentence."2 Nappi maintains that the state PSI qualifies as a "matter relating" to his sentence where, as here, it is clear that the Court relied upon the document in sentencing him at the top of the applicable Guideline range. He argues that in order to ensure that the "opportunity to

_____

1. While Nappi's brief argues that we should review the Court's noncompliance with Rule 32 for an abuse of discr etion, Nappi's counsel conceded at oral argument that our proper standard of review is for plain error due to counsel's failure to object in the District Court.

2. The text of Rule 32(c)(1) provides in pertinent part:

> (1) Sentencing Hearing. At the sentencing hearing, the court must afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determinations and
> on other matters relating to the appr opriate sentence, and must rule
> on any unresolved objections to the presentence report.

Fed. R. Crim. P. 32(c)(1) (emphasis added).

7

comment" requirement in Rule 32(c)(1) has any meaning, the District Court should have provided counsel with a copy of the state PSI prior to the sentencing hearing in order to afford Nappi a sufficient opportunity to review it and prepare an appropriate response.3

We agree with Nappi's interpretation of Rule 32(c)(1) in the circumstances presented here. Federal Rule of Criminal Procedure 32, which governs sentencing procedures in the federal courts, emanates from Congress' concern for protecting a defendant's due process rights in the sentencing process. United States v. Curran , 926 F.2d 59, 61 (1st Cir. 1991); see, e.g., United States v. Greer, 223 F.3d 41, 58 (2d Cir. 2000). Indeed, it is well settled that a defendant has a due process right to be sentenced based upon accurate information. E.g., T ownsend v. Burke, 334 U.S. 736, 741 (1948); Moore v. United States, 571 F.2d 179, 183 (3d Cir. 1978). Thus, to safeguar d this right, Rule 32 contains specific requirements that ensure that the defendant is made aware of the evidence to be considered and potentially used against him at sentencing, and is provided an opportunity to comment on its accuracy. See Moore, 571 F.2d at 182; see also United States v. Blackwell, 49 F.3d 1232, 1235 (7th Cir. 1995) ("It is well established that a convicted defendant has the right to be sentenced on the basis of accurate and reliable infor mation, and that implicit in this right is the opportunity to r ebut the government's evidence and the information in the presentence report."); United States v. Jackson, 32 F.3d 1101, 1105 (7th Cir. 1994) (Coffey, J., concurring) ("We begin with the well−established premise that a defendant

_____

3. Initially, Nappi relied upon Rule 32(c)(3)(A) to argue that the District
Court should have provided him and his counsel with a copy of the state PSI prior to the hearing, and given them an opportunity to comment on it. However, at oral argument his counsel focused upon the "opportunity to comment" language in Rule 32(c)(1). In any event, we point out that, as a technical matter, Rule 32(c)(3)(A) only requires the District Court to
allow the defendant and his counsel a reasonable opportunity to comment on any information excluded fr om the federal PSI under Rule 32(b)(5). And it is clear that the state PSI does not fall within the category of information that was excluded fr om the federal PSI pursuant to Rule 32(b)(5).

has a right to be sentenced on the basis of accurate information, . . . which implicates the cor ollary `right to know what evidence will be used against him at the sentencing hearing.' ") (quoting United States v. Morales, 994 F.2d 386, 389 (7th Cir. 1993)) (internal citation omitted); United States v. Cervantes, 878 F .2d 50, 56 (2d Cir. 1989) (noting that requirements of mandatory disclosure of PSI and opportunity to respond were introduced to "ensure accuracy of sentencing information").

Among other procedural safeguards in Rule 32 that were designed to ensure that the defendant is sentenced based on accurate information,4 Greer, 223 F.3d at 58; United States v. Gomez, 831 F.2d 453, 457 (3d Cir. 1987), Rule 32(c)(1) plainly states that counsel for the defendant and the government must be provided with an "opportunity to comment" at the sentencing hearing on the infor mation and conclusions in the PSI and "other matters r elating to the appropriate sentence." Fed. R. Crim. P . 32(c)(1). The Supreme Court has explained that the "opportunity to comment" language found in Rule 32(c)(1) pr ovides for "focused, adversarial development of the factual and legal issues relevant to determining the appr opriate Guidelines sentence." Burns v. United States, 501 U.S. 129, 138 (1991) (holding that district court must provide "r easonable notice" of intent to upwardly depart from Guideline range).

In the instant case, the District Court relied not only on the federal PSI the Probation Office pr epared, but also on Nappi's state PSI that the Probation Office had in its possession. Nappi's state PSI clearly constitutes a "matter relating to the appropriate sentence." Id. Thus, under plain

_____

4. Those additional requirements set forth in Rule 32 relating to the information to be used at sentencing include the following: (1) Rule 32(b)(1) states that a presentence report must be prepared in most cases; (2) Rule 32(b)(4) and (5) set forth the specific information to be included in and excluded from the PSI; (3) Rule 32(b)(6) provides for full disclosure to the defendant and counsel of the federal PSI within a set time period; (4) Rule 32(b)(6) allows the defendant to make specific objections to the factual information and conclusions in the PSI; and (5) Rule 32(c)(1) requires the court to make a finding on "each matter controverted" in the PSI or expressly state that no finding is necessary because the matter will not be taken into account at sentencing.

language of Rule 32(c)(1), Nappi was entitled to an opportunity to comment on the information in the report during the sentencing hearing. Moreover , given that the Rule is intended to promote "focused, adversarial development of the factual and legal issues," it follows that the Rule requires that counsel for the defendant and the government be provided with a meaningful opportunity to address the information at issue. Thus, we hold that where, as here, counsel are faced with having to review and address the contents of an additional document on which the Court intends to rely at sentencing, a meaningful opportunity to comment requires the Court, in accordance with Rule 32(c)(1), to provide a copy of the document to counsel for the defendant and the government within a sufficient time prior to the sentencing hearing to afford them with a meaningful opportunity to comment on it at sentencing and, depending on the document, pr epare a response or contest it. See United States v. Hayes, 171 F.3d 389, 392 (6th Cir. 1999) ("Rule 32 r equires that except in limited circumstances, . . . the defendant must have the opportunity to review information that will be used for sentencing."); United States v. Burger , 964 F.2d 1065, 1072 (10th Cir. 1992) (vacating sentence wher e victim's letter impacted restitution order and the court and Probation Office failed to provide copies to counsel, stating that "[w]e agree with [defendant] that the utilization of the letters without disclosure to him was violative of Fed. R. Crim. P. 32"); United States v. Connor, 950 F .2d 1267, 1278 (7th Cir. 1991) (dicta) (commenting that district court "should endeavor to insulate themselves" from extraneous documents it receives prior to sentencing unless it "makes them known to the parties"); Curran, 926 F.2d at 63 (exercising supervisory powers and adopting rule that sentencing courts considering extraneous documents should either "make clear that the document is not being used for its factual content, or should disclose to the defendant as much as was relied upon, in a timely manner, so as to afford the defendant a fair opportunity to examine and challenge it");[5] see  also United States v. Berzon, 941

_____

5. In Curran, the district court r eferred to information contained in letters from the defendant's victims in imposing its sentence without disclosing the letters to the defendant or his counsel. The Court of

10

F.2d 8, 18 (1st Cir. 1991) (stating that district court should have alerted the defendant, in advance of the sentencing hearing, that it expected to consider co-defendant's testimony at the sentencing hearing).

By stating that Rule 32(c)(1) requires the District Court to disclose such additional documents "within a sufficient time prior to the sentencing hearing to affor d them with a meaningful opportunity to comment," we refrain from adopting a more rigid rule because the time r equired in order for counsel to have a meaningful opportunity may vary depending on the circumstances. For example, we do not foreclose the possibility that it would be sufficient prehearing disclosure under Rule 32(c)(1) if the Court shared the documents with defense counsel on the date of the scheduled sentencing hearing, if the cir cumstances warranted that procedure. Depending on the number and complexity of the documents at issue, such pr ehearing notice could suffice if the Court adjourned the sentencing for a reasonable period in order to pr ovide counsel with sufficient time to prepare a response. The District Court should be guided by the principal goal of pr oviding adequate notice and opportunity to respond to the factual information the Court intends to consider at sentencing.

Requiring reasonable prehearing disclosur e of the documents that the Court intends to rely upon at sentencing comports with the manner in which Rule 32

_____

Appeals for the First Circuit found that Rule 32 technically did not apply because the letters referenced at the sentencing hearing were not made part of the federal PSI. Curran, 926 F .2d at 62. It thus exercised its supervisory powers to fashion its rule that district courts must disclose extraneous documents to defendants "in a timely manner" if they intend to rely upon them at sentencing. As is evident from the text, we agree with the legal rule adopted in Curran, but we premise our holding on the language of Rule 32(c)(1). E.g., Hayes , 171 F.3d at 393 (disagreeing with Curran court's conclusion that Rule 32 does not require disclosure of extraneous documents but agreeing with r esult and rule it adopted); see also Burns, 501 U.S. at 135-37 (interpr eting Rule 32 as requiring a district court to give a defendant prior war ning that it is considering an
upward departure on a basis not mentioned in the federal PSI, despite the fact that the Rule's literal language contains no such requirement).

11

prescribes disclosure of the federal PSI to the defendant and counsel, which, in most circumstances, serves as the critical document providing the factual and legal information bearing upon the Court's sentencing determination. See Moor e, 571 F.2d at 182 (stating that an "abiding concern about the use by a trial judge of material derived from a [presentence report] is that it may contain false or unreliable information," but noting that "this danger is somewhat alleviated" by disclosur e requirement in Rule 32); see also Curran, 926 F.2d at 64 & n.4 (noting that "concern for ensuring the reliability of information used at sentencing seems to have informed the disclosure policy embodied in Rule 32"). The Advisory Committee's Note to Rule 32 explains that the Rule was amended in 1983 to require the district court, on its own initiative, to afford the defendant and his counsel an opportunity to read and comment on the PSI within "a reasonable time before imposing sentence," because "if the report is not made available to the defendant and his counsel in a timely fashion, and if disclosure is only made on r equest, their opportunity to review the report may be inadequate." Fed. R. Crim. P. 32 advisory committee's note (1983 amends.).6 Id.

_____

6. A Prior to 1983, Rule 32(c)(3)(A), as enacted in 1975, had required the court to allow defense counsel or the defendant"to read" the PSI and comment on it, but disclosure was requir ed only "before imposing sentence," and only upon the defendant's specific request. The pre-1975 version of Rule 32(c)(2) permitted, but did not require, the court to disclose the contents of the PSI to the defendant or his counsel and provide an opportunity to comment on it. Fed. R. Crim. P. 32 advisory committee's note (1974 amends.).

After the 1983 amendment, Rule 32(c)(3)(A) was amended again in 1989 to change the "reasonable time" language to require that the defendant and defense counsel be provided with"a copy of the PSI at least 10 days prior to sentencing," unless the defendant waives that minimum period. Id. advisory committee's note (1989 amends.). Finally, in 1994, Rule 32 was reorganized and amended, and Rule 32(b)(6) now provides that the probation officer must present the PSI to the defendant, the defendant's counsel, and the gover nment's counsel, no later than 35 days before the sentencing hearing, unless the defendant waives that minimum period. Moreover Rule 32(b)(6)(B),(C), and (D) now provide explicit deadlines and guidance on r esolving disputes about the contents of the PSI. Id. advisory committee's note (1994 amends.).

12

As a matter of logic, regardless of whether the relevant factual information is derived from the federal PSI or some other additional source, the defendant must be afforded the opportunity to review the evidence assembled against him for sentencing purposes and to prepare a meaningful response. And unless disclosure of the additional documents pursuant to Rule 32(c)(1) is made sufficiently in advance of the sentencing hearing to permit counsel to review the information and to allow infor med comment, the purpose of promoting accuracy and fairness in the sentencing process, which undergir ds Rule 32, will be defeated. E.g., Burger, 964 F .2d at 1073; Berzon, 941 F.2d at 18; see also 3 Charles Alan Wright, Federal Practice and Procedure: Criminal S 524 (2d ed. 1982) (noting that disclosure of the PSI "is not an end in itself," but rather, it "provide[s] an opportunity for the defense to comment on statements . . . and to correct mistakes"); cf. Burns, 501 U.S. at 135–36 ("In our view, it makes no sense to impute to Congress an intent that a defendant have the right to comment on the appropriateness of a sua sponte departure but not the right to be notified that the Court is contemplating such a ruling.").

In the instant case, Nappi had no knowledge that the Court even had the state PSI in its possession, let alone would consider it, until the Court mentioned it while it was imposing its sentence.7 In the circumstances, the Court effectively blind-sided Nappi's counsel with the document, and completely foreclosed his ability to r espond meaningfully, or for that matter, at all.

_____

7. While the government surmises that Nappi "in all likelihood received a copy of the state PSI prior to being sentenced in New Jersey state court" because N.J. Crim. R. 3:21–2 states that the PSI "shall be furnished to the defendant and the prosecutor," Appellee's Br. at 14 n.5, the record in the instant case does not r eveal whether Nappi ever received a copy of the state PSI during the state proceedings. Moreover, at oral argument, Nappi's counsel stated he was not certain whether his client had received the report during the state sentencing proceeding. In any event, it is clear that Nappi and his attor ney did not receive a copy of the state PSI in the context of the federal sentencing hearing, which occurred several years after the report was initially prepared.

The government urges that Rule 32(c)(1) does not mandate that the District Court disclose all of the additional documents it receives in connection with a defendant's sentence, and, accordingly, we should not read into the Rule a requirement that the Court must disclose documents that it intends to rely upon at the sentencing hearing. The government's reading of the rule, however, cannot be squared with the text of Rule 32(c)(1). The government's position contravenes the plain language of Rule 32(c)(1) because it undermines the expr ess right to comment, through counsel, "upon matters r elating to the appropriate sentence." As we have indicated, the Rule protects the defendant's right to an opportunity--a meaningful opportunity--to comment on infor mation relating to the federal sentence about to be imposed. And absent advance disclosure of the documents the Court has received and intends to rely upon at sentencing, defense counsel would have no ability to comment in an ef fective manner. See Burns, 501 U.S. at 136 ("The right to comment . . . has little reality or worth unless one is informed that a decision is contemplated.") (internal quotation marks omitted).

Further, the government's position runs counter to the Rule's stated "purpose of promoting focused, adversarial resolution of the legal and factual issues r elevant to fixing Guidelines sentences," id. at 137, and congressional intent in promulgating the Rule in the first place. Obviously, imposing a prehearing disclosure r equirement works to counsels' benefit because it affords them more time to compose their thoughts and consider their possible responses than if the sentencing court wer e to inform counsel of the existence, and contents of, the document for the first time during the sentencing hearing. The additional time to prepare thus increases the likelihood that the responses provided will be thoughtful and well reasoned, which in turn furthers the adversarial pr ocess contemplated by Rule 32.

Moreover, as we have explained, the disclosure requirements in Rule 32 were developed to ensure that the defendant is sentenced based upon accurate infor mation. Berzon, 941 F.2d at 18; see United States v. Reiss, 186 F.3d

14

149, 157 (2d Cir. 1999). If we accepted the government's position and adopted an interpretation of Rule 32(c)(1) that would permit the District Court to inexplicably withhold from the parties a document that it relies upon in imposing its sentence, we would be opening the door to a gr eater possibility that the defendant could be sentenced based upon inaccurate sentencing information, rather than eliminating that very real danger from the sentencing process.

Finally, our view that Rule 32(c)(1) requir es reasonable prehearing disclosure of additional documents considered by the Court is consistent with the Supreme Court's analysis in Burns v. United States, where the Court, although addressing a slightly differ ent issue under Rule 32, reached the same conclusion regar ding the importance of notice and opportunity to comment in the sentencing process. In Burns, the Court r eviewed a district court's sua sponte upward departure from the applicable Guideline range. 501 U.S. at 135–37. The district court had given the defendant no advance notice of its intent to depart, and no opportunity to comment on it prior to imposing sentence. On appeal, the defendant argued that Rule 32(a)(1) (currently Rule 32(c)(1)) obliged the district court to furnish advance notice of its intent to upwardly depart from the Guideline range. He based his position on the language in Rule 32(a)(1) which required the District Court to afford the parties with "an opportunity to comment upon . . . matters relating to the appropriate sentence." Id. The Court of Appeals for the District of Columbia Circuit adopted the government's reading of Rule 32 and affirmed the sentence. Applying a textual analysis, the court of appeals held that the Rule contained no express language r equiring a district court to provide notice of the court's intent to upwardly depart from the Guideline range. Id. at 132.

On appeal to the Supreme Court, the Court r ejected the court of appeals' interpretation of Rule 32(a)(1), grounding its analysis on the "textual and contextual evidence of legislative intent."8 First, it pointed out that the court of

---

8. In November 1991, the Sentencing Commission added Application Note 1 to U.S.S.G. S 6A1.2 to requir e reasonable notice of an intention to depart, reflecting the Supreme Court's decision in Burns. See U.S.S.G. app. C, amend. 425 (1998).

15

appeals' reading of Rule 32(a)(1) "r endered meaningless the parties' express right `to comment upon matters relating to the appropriate sentence.' " Id. at 136 (quoting Rule 32(a)(1)). Second, it rejected the gover nment's argument, predicated on congressional silence in Rule 32(a)(1), as being inconsistent with Rule 32's "purpose of pr omoting focused, adversarial resolution of the legal and factual issues relevant to fixing Guidelines sentencing." Id. at 137. It concluded that

> before a district court can depart upwar d on a ground not identified as a ground for upward departure either in the presentencing report or in a pr ehearing submission by the government, Rule 32 r equires that the district court give the parties reasonable notice that it is contemplating such a ruling. This notice must specifically identify the ground on which the district court is contemplating an upward departur e.

Id. at 138-39.9

In the instant case, the government's ar gument is a textual one, substantially similar to the one the Supreme Court expressly rejected in Bur ns. It asks us to elevate form over substance and adopt a construction of Rule 32(c)(1), that, as in Burns, would be contrary to the language and purpose of the Rule. But the Court's holding and analysis in Burns confirms that we must reject the government's proposed reading of the phrase "opportunity to comment . . . on matters relating to the appropriate sentence" as not requiring disclosure of a document to counsel on which the Court intends to rely at sentencing. Indeed, the fact that the Rule does not expressly requir e disclosure is not dispositive when, as in Burns, "all other textual and contextual evidence of congressional intent" points to the opposite conclusion. Id. at 137.

_____

9. The Court did not indicate what "reasonable notice" meant in practice. It explicitly stated that "[b]ecause the question of the timing of the reasonable notice required by Rule 32 is not before us, we express no opinion on that issue. Rather, we leave it to the lower courts, which, of course, remain free to adopt appropriate procedures by local rule." Burns, 501 U.S. at 129 n.6.

16

We also are not persuaded by the gover nment's argument that the District Court cured its error in not sharing the document with counsel by actually affor ding counsel with an opportunity to comment when it asked if ther e was "anything further" to discuss after it sentenced Nappi to 105 months' imprisonment. The concept of meaningful opportunity to comment would be turned on its head if we were to find that such a question, at the conclusion of the sentencing hearing, constituted an opportunity for comment on a document after the Court has pr onounced its sentence. At that point, the Court has alr eady imposed its sentence, and any objection to the contents of the document is a fruitless exercise as far as actually influencing the sentencing court is concer ned.10 Rather, the purpose behind Rule 32(c)(1) as it applies in this context is to allow the defendant an opportunity to rebut or explain the contents of a document in an attempt to persuade the court concerning its meaning and/or relevancy before it sentences the defendant.

In sum, we are convinced that the District Court violated Rule 32(c)(1) because it failed to disclose the state PSI to counsel for the defendant and the government within a sufficient time prior to the sentencing hearing, and did not provide counsel with an opportunity to comment on the contents of the document prior to pronouncing its sentence.

B.

Our conclusion that the Court violated Rule 32(c)(1) does not end our inquiry. We must determine whether the error was plain, that is, "clear or obvious," and the defendant must show that the error "affect[s] substantial rights." We will not dwell on the obviousness of the Rule 32(c)(1) error under current law because we believe that Nappi's

_____

10. Of course, a belated objection is not entir ely without purpose, as it would preserve the issue for review by the appellate court. By referring to a post-sentencing pronouncement objection as"fruitless," we mean only to highlight the fact that by that point in the proceeding, the Court has already made up its mind that the document is relevant, and has already formed an opinion as to how it af fects the sentencing determination.

substantial rights were not affected.[11] In Olano, the Court explained that "in most cases, [`affect[s] substantial rights'] means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." Olano, 507 U.S. at 734. The Court also clarified that under plain error review "the defendant rather than the government bears the burden of persuasion with respect to prejudice." Id.

Nappi urges that the appropriate course of action to cure the Rule 32(c)(1) violation that occurred is to vacate the District Court's sentence of 105 months' imprisonment, and remand the matter for resentencing. His primary contention is that we should be guided by our analysis in Unites States v. Faulks, 201 F.3d 208 (3d Cir. 2000), a case in which we vacated a defendant's federal sentence and r emanded for resentencing based upon the District Court's failure to pronounce its sentence orally and in the defendant's presence, in violation of Fed. R. Crim. P . 43.

_____

11. The error here was the failur e to give counsel the "opportunity to comment . . . on matters relating to the appr opriate sentence." Fed. R. Crim. P. 32(c)(1). We have concluded that the state PSI was such material, and that the District Court should have pr ovided counsel with a meaningful opportunity to comment by pr oviding the document in advance of the sentencing hearing. We concede that it could be argued that, in crafting the way in which we give meaning to the concept of "opportunity to comment on . . . matters r elating to the appropriate sentence," we have established a prehearing disclosure requirement that is not so "obviously" or "clearly" mandated by the specific language of Rule 32(c)(1), and that accordingly, the District Court's failure to disclose
the document to counsel cannot constitute "plain error." On the other hand, because an error is clear if it is "clear under current law," Olano, 507 U.S. at 734, it could be argued that case law we reference above has prescribed the type of disclosure we endorse, such that the error was clear under current law. See United States v. Clark, 237 F.3d 293, 298 (3d Cir. 2001) (stating that defendant's pr oposed methodology for calculating Guidelines sentence was plausible but that he could not demonstrate that the court's use of a contrary methodology was "an error [which was] clear under curr ent law," especially in view of the existing case law from other courts of appeals that supported district court's methodology). However, as we have indicated, we need not, and will not, address that issue.

18

In the alternative, Nappi maintains that he has satisfied his burden of proving prejudice in view of the fact that the District Court sentenced him to the maximum sentence allowable in the Guideline range--105 months' imprisonment. His position appears to be that, in view of the Court's obvious reliance upon the state PSI, it is clear that the Court would have sentenced him to a lower sentence within the Guideline range if it had not considered the information.

We begin with Nappi's argument that our analysis in Faulks compels the conclusion that vacatur and r emand is appropriate, as it need not detain us long. Hefirst points out that in Faulks, we vacated a sentence and remanded for resentencing because we could not "know with sufficient certainty that the error [in failing to impose the Court's sentence orally in the defendant's physical pr esence] was harmless." Id. at 213. Nappi then r elies upon our statements in Faulks that compliance with Rule 43 was not "a meaningless formality" but rather"a fundamental procedural guarantee" that "implicate[d] constitutional concerns," id. at 211-13, to contend that the procedural protection of being afforded an opportunity to comment on information affecting the sentence is equally as fundamental. From these premises, he ur ges us to vacate his sentence and remand for resentencing in view of the Court's disregard of Rule 32(c)(1), even if, strictly speaking, he cannot affirmatively demonstrate any pr ejudice from the error.

We are not persuaded by Nappi's attempted analogy to Faulks for two reasons. Its primary analytical flaw is that it overlooks a critical distinction between Faulks and this case: in Faulks, we indicated that wer e we to examine the harmlessness, it was the government , rather than the defendant, that had the burden of establishing the error's harmlessness under Rule 52(a), and we stated that it had not "even attempted to meet its burden of establishing the error's harmlessness." Id. at 212-13. Here by contrast, Nappi bears the burden of persuasion on the issue of prejudice under Rule 52(b) because he failed to object to the Rule 32(c)(1) violation during the course of the District Court proceedings. Thus, the fact that we vacated Faulks'

19

sentence and remanded for resentencing where there was no showing of harmlessness provides no support for the conclusion that the same result should obtain in the instant case, which is governed by the mor e stringent plain error standard of review mandated by Rule 52(b).

Nappi's reliance on Faulks is further misplaced because it is bottomed on the incorrect premise that the Court's violation of Rule 32(c)(1) implicates fundamental constitutional concerns as did the Rule 43(a) error involved in Faulks. In Faulks, we noted that the "Rule 43 error in this case implicates constitutional concerns." Faulks, 201 F.3d at 213. We found United States v. Moree, 928 F.2d 654, 656 (5th Cir. 1991), which focused on the "elementary" nature of the defendant's right to be pr esent at the time of sentencing, directly applicable. Subsequently in Stevens, we hinted that the Faulks court found that the violation of Rule 43 amounted to a structural constitutional defect in sentencing, although the Faulks opinion did not explicitly so state. Stevens, 223 F.3d at 245 (citing Faulks, 201 F.3d at 211).

The Supreme Court has recognized a "very limited class of fundamental constitutional errors" that "infect the entire trial process" and are so serious that they "require automatic reversal . . . without regar d to their affect on the outcome." Neder v. United States, 527 U.S. 1, 7, 8 (1999) (such errors including complete denial of counsel, biased trial judge, racial discrimination in selection of a grand jury, denial of self-representation at trial, denial of a public trial, and defective reasonable-doubt jury instruction). In Stevens, we rejected the defendant's attempt to add to this "very limited class of cases" the district court's failure to verify that the defendant had read and discussed the federal PSI with his attorney in accor dance with Rule 32(c)(3)(A). Stevens, 223 F.3d at 244. We concluded that the court failed to comply with Rule 32(c)(3)(A)'s verification requirement, but that the violation did not rise to the level of a constitutional error, let alone a structural defect requiring automatic vacatur of the sentence without regard to the error's affect on the outcome the proceedings. Id.

We view the Rule 32(c)(1) error her e as similar to the Rule 32(c)(3)(A) violation at issue in Stevens. While the

20

procedures set forth in Rule 32 ar e intended to safeguard the defendant's due process rights at sentencing, e.g., Curran, 926 F.2d at 61, and if a defendant were sentenced based upon inaccurate information, his due pr ocess rights would be violated, e.g., Townsend , 334 U.S. at 741; Moore, 571 F.2d at 183–84, it is clear that the err or that occurred here, without more, is not of constitutional dimension. E.g., United States v. Simmonds, 235 F.3d 826, 837 (3d Cir. 2000); Curran, 926 F.2d at 61; see also Fed. R. Crim. P. 32, advisory committee's note (1966 amends.) ("It is not a denial of due process of law for a court in sentencing to rely on a report of a presentence investigation without disclosing such report to the defendant or giving him an opportunity to rebut it.").

Accordingly, Nappi bears the burden of demonstrating that he was prejudiced by the District Court's error. We agree with the government's position that Nappi has not made a sufficient showing of prejudice to warrant the conclusion that the Rule 32(c)(1) error "af fect[ed] [his] substantial rights." Olano, 507 U.S. at 734. We reject Nappi's argument that we should vacate and r emand the matter for resentencing based upon the natur e of the right at stake and the magnitude of the District Court's error. To the contrary, Nappi must convince us that, had he known that the District Court was going to rely on the state PSI, he would have done something by way of argument or proof relating to the document that probably would have impacted upon the Court's sentence. As we have indicated, under the plain error standard, Nappi bears the burden of establishing that the error "affected the outcome of the district court proceedings." Olano, 507 U.S. at 734. On this record, we conclude that Nappi has not done so, and that it would probably be difficult to prove in any event under the facts presented.

First, it is significant that defense counsel has not provided any indication as to how, if given the proper notice and opportunity to comment, he could have challenged the information in the report in a manner that would have led the District Court to impose a lesser sentence within the Guideline range. Importantly, defense counsel has made no suggestion that the information in the r eport was

21

inaccurate or false, or that the Court mischaracterized any of the information it cited from the state PSI. E.g., Stevens, 223 F.3d at 243 (finding no prejudice from violation of Rule 32(c)(3)(A) where defendant failed to assert any inaccuracy in the PSI). In the circumstances, he has failed to show us anything that would even justify an inference, let alone prove, that the District Court's sentence was bound to be different if Nappi had been afforded a copy of the state PSI in advance of the hearing and had been given an opportunity to comment on it.12  See United States v. Garcia, 78 F.3d 1457, 1465 (10th Cir. 1996) (where district court evaluated witness's credibility by relying upon extra-record affidavit at sentencing without first informing defendant, court of appeals stated that district court violated Rule 32(c)(1) but found no prejudice; court noted that "[d]efendant fails to allege any facts or law that suggest the court's opinion of [the witness] would have changed if defendant had been aware of the . . . affidavit prior to sentencing"); United States v. Lockhart, 58 F.3d 86, 89 (4th Cir. 1995) (concluding that defendant failed to demonstrate that he was prejudiced by the court's Rule 32(c)(3)(A) violation where he could not "point[] to any portion of the presentence report that he would have challenged had the district court made an express inquiry"); United States v. Rangel-Arreola, 991 F.2d 1519, 1526 (10th Cir. 1993)

_____

12. In evaluating whether Nappi has satisfied his burden of showing prejudice, it is important to keep in mind that the District Court could have relied upon the state PSI if it had complied with Rule 32(c)(1). All the Court was required to do was to disclose the state PSI to counsel prior to the sentencing hearing and afford counsel an opportunity to comment on it before pronouncing its sentence. Thus, the relevant prejudice inquiry is whether, and how, defense counsel could have rebutted the contents of the report, and whether the Court's sentencing determination would have been different if counsel had been given the opportunity to do so; it is not whether the Court would have imposed a lighter sentence within the Guideline range in the absence of its consideration of the state PSI. However, even if we were looking at the prejudice issue from that perspective, Nappi could not demonstrate prejudice in any event. As we explain in the text, the information in the state PSI was largely cumulative, and there was a sufficient basis for the
Court's sentence based on the factual information already found in the federal PSI.

22

(affirming sentence where district court violated Rule 32 by failing to determine whether defendant had opportunity to review PSI and discuss it with his attor ney because defendant "suffered no prejudice;" court noted that defendant "points to no factual inaccuracies used in computing his sentence"); United States v. Stevens, 851 F.2d 140, 145 (6th Cir. 1988) (affir ming sentence notwithstanding district court's failure to determine whether defendant had opportunity to review PSI and discuss it with counsel; court of appeals found that defendant did not establish prejudice because district court did not rely on inaccurate information in sentencing defendant).13

Further, we doubt whether it would be possible to prove harm, in any event. As the government correctly points out, the vast majority of the information contained in the state PSI was also contained in the federal PSI, either in the "Juvenile Adjudications" section or elsewher e in the report. Even by Nappi's own admission, the discrepancies were few in number and the overlap was significant. Thus, rather than supplying totally new factual information concerning the extent of Nappi's juvenile criminal history, the state PSI supplemented, but only slightly, the information already found in the federal PSI. See Appellant's Br . at 13

_____

13. See also United States v. Moore , 958 F.2d 646, 651 (5th Cir. 1992) (rejecting argument that court violated Rule 32 in considering confidential information in sentencing defendant without providing an opportunity to comment; court noted that defendant did not object below and that "[e]ven in these proceedings, there is no claim made that the trial judge's information was inaccurate"); United States v. George, 911 F.2d 1028, 1029-30 (5th Cir. 1990) (holding that district court complied with former Rule 32(a)(1) where court asked counsel during sentencing hearing whether circumstances warranted upwar d departure and counsel responded; court rejected defendant's argument that notice provided was insufficient and stated that defendant "has not shown how he was prejudiced by this notice [given], how he could have been helped by additional notice or time"); United States v. DeBardeleben, 740 F.2d 440, 447 (6th Cir. 1984) (affirming sentence where court heard evidence at sentencing hearing not contained in presentence report; court based decision in part on fact that defendant "does not suggest what rebuttal he could make [to the evidence] other than his blanket denial, which the court had already heard").

23

(characterizing state PSI as "supplement[ing] Nappi's juvenile history as stated in the federal pr esentence report"). We also recognize that the state PSI made it easier for the Court to consider the totality of the juvenile history because it listed each of Nappi's contacts with the juvenile justice system in chronological order . But the fact still remains that the amount of overlap in the federal and state PSIs supports the conclusion that the information in the state PSI was largely cumulative, which weighs against a finding of prejudice. See United States v. Patrick, 988 F.2d 641, 648 (6th Cir. 1993) ("Where the evidence upon which the sentencing court relies without previously notifying the defendant is of the same character, allows the same inferences, and, most importantly, is subject to the same arguments in rebuttal as evidence in the record of which the defendant is already aware, it seems logical to conclude that advance notice would not give the defendant any additional incentive or ability to challenge the evidence."); cf. Hayes, 171 F.3d at 394-95 (court found that violation of Rule 32(c)(1) affected substantial rights based in part on the fact that there was no indication that the information provided in victims' letters, on which the district court relied in sentencing the defendant, was similar to or cumulative of evidence already presented).

Additionally, given the wealth of information already in the federal PSI, we have little difficulty in finding that there was a sufficient amount of information concerning Nappi's juvenile history in the federal PSI that could easily have led the Court to the same decision--i.e., that Nappi's numerous arrests and convictions warranted the harshest sentence available within the applicable Guideline range. This fact also supports the conclusion that there was no prejudice in the circumstances presented here. See Patrick, 988 F.2d at 648 (finding harmless error in failing to apprise defendant of court's reliance on extra-recor d information where "the other evidence already before the sentencing judge and a part of the presentence report fully supported the judge's ultimate finding that [defendant's] r ole was that of a leader."). Accordingly. we conclude that Nappi has not shown that he was prejudiced by the Court's err or.14

_____

14. Given this conclusion, we need not consider the last part of the Olano framework--whether we should exer cise our discretion to correct

24

IV. CONCLUSION

We recognize, of course, that the "sentencing judge may attend to more than the PSI when making sentencing decisions," United States v. Pandiello, 184 F.3d 682, 686 (7th Cir. 1999), and our holding today does not foreclose a sentencing court's reliance upon additional documents if it is helpful to do so. Nevertheless, when the District Court relies on documents other than the federal PSI at sentencing, we hold that Rule 32(c)(1) requir es the District Court to share any such documents with counsel for the defendant and the government within a sufficient time prior to the sentencing hearing to afford them a meaningful opportunity to respond. Rule 32(c)(1) also mandates that the Court provide counsel with a reasonable opportunity to comment on any such additional information prior to pronouncing its sentence.

We hold that the District Court erred in sentencing Nappi based in part on information found in the state PSI. However, Nappi has not met his burden of establishing that his substantial rights were affected. W e therefore will AFFIRM the District Court's judgment.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

_____

the error because it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Stevens, 223 F.3d at 242 (quoting Olano, 507 U.S. at 732).