**UNITED STATES of America,**

v.

**Nicholas VALENZUELA Appellant,**

No. 02–3468.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) July 11, 2003.

Decided Sept. 5, 2003.

Marc Osborne, United States Department of Justice, Washington, DC, for Appellee.

Thomas A. Bello, Philadelphia, PA, for Appellant.

Before NYGAARD and SMITH, Circuit Judges and IRENAS,* Senior District Judge.

## OPINION OF THE COURT

IRENAS, Senior District Judge.

Presently before the Court is Nicholas Valenzuela's appeal from a final judgment of the District Court. First, Valenzuela claims that the District Court erred by considering the statements of cooperating co-defendants as evidence of Valenzuela's managerial role in the offense. Second, Valenzuela claims that the District Court erred when it decided at the sentencing hearing to make an adjustment for managing a crime involving more than five persons. Under U.S.S.G. § 3B1.1(b), the District Court adjusted the Defendant's offense level by three points.

## I.

On September 13, 2001, Valenzuela, Fernando Haro, and Michael Torres were arrested after U.S. Customs agents intercepted a trailer containing a large shipment of marijuana hidden in clay pots at the border in Laredo, Texas, and then proceeded with a controlled delivery of the shipment to a warehouse in Wilmington, Delaware. Shortly after the delivery to the warehouse, Valenzuela arrived with two other individuals, including co-defendant Haro.

The pre-sentence report placed Valenzuela at a Total Offense Level of 31 and a Criminal History Category of 1, for which the guideline range for imprisonment is

108 to 135 months. The range was adjusted to between 120 to 135 months based on a statutory mandatory minimum of 120 months. The total offense level of 31 included a two level upward adjustment for Role in the Offense. The report explained the two point adjustment in the following excerpt:

> Guideline Section 3B1.1[1] instructs us to increase the offense level if the defendant was the organizer, leader, manager, or supervisor of the offense. Defendant Valenzuela's role in the conspiracy was that of an organizer or manager. He is the only defendant who traveled to Mexico to facilitate the importation of marijuana, while defendant Torres assumed an organizing or managerial role by making the arrangements for a storage location in Delaware. Defendant Valenzuela's managerial role in the offense is demonstrated by his recruitment of co-defendant Haro to assist with unloading the two shipments, and is also demonstrated in the fact that he did not personally participate in unloading the truck. (Pre-sentencing report, 9)

Valenzuela objected to the two point increase and the characterization of his role as a manager or supervisor in an addendum to the pre-sentence report. In the same addendum, the government also indicated that it intended to oppose the Defendant's objection. The government asserted that during Valenzuela's second proffer, he admitted that he was the leader of the conspiracy, that he initiated the scheme to import marijuana from Mexico based on his contacts there, and that he recruited co-defendant Haro to join the conspiracy.

On March 25, 2002, Valenzuela pleaded guilty to one count of conspiracy to possess

---

* Honorable Joseph E. Irenas, Senior District Judge for the United States District Court for the District of New Jersey, sitting by designation.

1. The report is referring to U.S.S.G. § 3B1.1(c).

marijuana with the intent to distribute and one count of importation of marijuana. At his sentencing hearing, Valenzuela confirmed during cross-examination that he once went to Mexico to arrange for the importation of marijuana, that he was in control of the marijuana shipments after they entered the United States, and that he had possibly recruited Haro into the drug scheme. After Valenzuela's testimony, the government sought to increase the Appellant's base level by three points, arguing that, under U.S.S.G. § 3B1.1(b), he was a manager or supervisor and the criminal activity involved five or more participants.

The District Court adjusted the offense level as requested by the government, noting that even if Valenzuela did not recruit Haro and Torres and even if his co-defendants were his business partners as he alleged, the evidence supported his managerial/supervisory role in the scheme.[2] The District Court also agreed with the government that "the defendant's proffer itself confirms the individual proffers of Torres and Haro which probably could not stand on their own. Therefore, the Court concludes Mr. Valenzuela was a manager or organizer." (App.183–85). Valenzuela's final offense level was 32 and his criminal history category was I, yielding a sentencing range of 121–151 months. He was sentenced to 128 months' incarceration, five years supervised release, and a $200 special assessment.

## II.

A sentencing court considering an adjustment of the offense level bases its determination on the preponderance of the evidence with which it is presented. *United States v. McDowell*, 888 F.2d 285, 291 (3d Cir.1989). However, in the extreme

context where the sentencing hearing functions "as the tail that wags the dog of the substantive offense," the fact finding underlying that departure must be established at least by clear and convincing evidence. *U.S. v. Kikumura*, 918 F.2d 1084, 1101 (3d Cir.1990) (clear and convincing standard is appropriate when dealing with evidence that would increase defendant's sentence from approximately 30 months to 30 years, the equivalent of a 22 level increase in offense level). Information used as a basis for sentencing under the Guidelines must also have a "sufficient indicia of reliability to support its probable accuracy." *U.S. v. Miele*, 989 F.2d 659, 664 (3d Cir.1993) (estimate of drug quantity by addict-informant with impaired memory did not have indicia of reliability necessary to attribute that drug quantity to defendant when determining base offense level); *see* U.S.S.G. § 6A1.3.

Rulings on the admission of evidence are generally reviewable for abuse of discretion. *U.S. v. Serafini*, 233 F.3d 758, 768 (3d Cir.2000); *U.S. v. Gatto*, 995 F.2d 449, 453 (3d Cir.1993); *U.S. v. Leo*, 941 F.2d 181, 188 (3d Cir.1991). The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, shall accept the findings of fact of the district court unless they are clearly erroneous, and shall give due deference to the district court's application of the guidelines to the facts. *U.S. v. McDowell* 888 F.2d 285, 291–92 (3d Cir. 1989); *see* 18 U.S.C.A. §§ 3742(e). The court of appeals should affirm the trial court's determination unless it finds that the trial court acted arbitrarily or irrationally. *Government of Virgin Islands v. Albert*, 241 F.3d 344, 347 (3d Cir.2001); *e.g. United States v. Universal Rehabilita-*

---

2. The District Court was not departing from the Sentencing Guidelines, but was instead only adjusting the Defendant's offense level under U.S.S.G. § 3B1.1(b).

*tion Servs.,* 205 F.3d 657, 669 (3d Cir. 2000).

█ Appellant Valenzuela relies on *Kikumura* to argue that a higher evidentiary standard should have been applied by the District Court to his co-defendants' proffer statements since they were relied upon in making a significant departure from the sentencing guidelines. Valenzuela further argues that Haro's and Torres' proffer statements failed to meet the sufficient indicia of reliability standard under U.S.S.G. § 6A1.3(a), and therefore should not have been relied upon by the District Court in deciding his sentence.

The facts in this case are not comparable to those in *Kikumura,* where the clear and convincing evidentiary standard was warranted because the trial court added 30 years, or almost a 22 level increase, based on the statement of an unidentified confidential informant. In the instant case the co-defendants' proffers were only part of the evidence relied upon by the trial court. Furthermore, the trial court only made a three level adjustment, rather than a complete and total departure from the initial base offense level. The sentencing enhancements applied in this case were not so severe as to warrant a heightened evidentiary standard and the District Court was correct in evaluating the co-defendants' proffers and other evidence under the preponderance of the evidence standard.

█ Valenzuela provides no support for the argument that testimony by co-defendants, given without any evidence of personal gain or under an agreement with the government, is *per se* prejudicial and lacking sufficient reliability. Valenzuela relies on *Miele* to argue that Haro's and Torres' proffer statements lack a sufficient indicia of reliability. However, Haro's and Torres' proffer statements are not analogous to the glaringly unreliable testimony in

*Miele,* where the recommendation for a greater sentence was based almost completely on an out of court statement, later contradicted under oath, by an addict-informant with an impaired memory. *Miele,* 989 F.2d at 660. In the instant case the District Court did not rely exclusively on Haro's and Torres' proffer statements in determining that Valenzuela played a managerial role in the crime. As the District Court noted, the co-defendants' proffer statements were corroborated by Valenzuela's own testimony, and there was additional evidence of Valenzuela's managerial role.

We do not find the abuse of discretion or clear error necessary to reverse the District Court's decision to include the proffer statements of Haro and Torres in its assessment of Valenzuela's role in the crime. Not only did Haro's and Torres' statements corroborate each other, but Valenzuela's own testimony corroborated the co-defendants' statements that were relevant to his sentencing increase. In determining whether Valenzuela assumed a managerial or supervisory role, the trial court focused on the significance of Valenzuela's own testimony as well as other evidence, and acknowledged that the proffer statements of co-defendants Haro and Torres alone could not have supported an upward departure in Valenzuela's sentence. We conclude that the trial court did not abuse its discretion or exhibit clear error in finding that the preponderance of the evidence supported a three point upward adjustment to Valenzuela's offense level for supervising or managing a criminal activity involving five or more participants.

### III.

█ Before a district court can upwardly depart from the applicable Guidelines range for reasons not identified as grounds

for such departure in the pre-sentence report, Fed.R.Crim.P. 32(h) requires that the court give the parties reasonable notice that it is contemplating such a ruling, specifically identifying the ground for the departure. *Burns v. U.S.*, 501 U.S. 129, 129, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991); *see* U.S.S.G. § 6A1.2, Note 1. However, the District Court in this case did not depart from the Guidelines, but instead made an adjustment, based partly on the pre-sentence report. Counsel for the defendant and the government must be provided with an "opportunity to comment" at the sentencing hearing on the information and conclusions in the pre-sentence report and "other matters relating to the appropriate sentence." *U.S. v. Nappi*, 243 F.3d 758, 763 (3d Cir.2001) (quoting Fed.R.Crim.P. 32(c)(1)).

The Appellant cannot say that he was unaware that § 3B1.1 would be an issue at sentencing. In the pre-sentence report that specific section of the Guidelines was identified as a basis for adjustment. While the specific issue of the Defendant receiving an adjustment for supervising or managing a criminal activity involving five or more people was not in the report, the use of § 3B1.1 was identified and the Defendant had more than enough advance notice that § 3B1.1 would be an issue at sentencing.

Even if the Appellant is correct and there was not adequate notice, a violation of the Rule 32 notice requirement is subject to harmless error analysis. *Nappi*, 243 F.3d at 770 (violation of a defendant's right to advance notice of the information upon which he or she is to be sentenced does not create structural error). The relevant inquiry is not whether the court would have found the defendant eligible for the enhancement had it not considered the disputed evidence, but whether defendant would have been found eligible for that enhancement had the district court

given counsel prior warning that it would be considering the evidence and afforded defense counsel sufficient time to mount a meaningful challenge to that evidence. *U.S. v. Reynoso*, 254 F.3d 467, 475 (3d Cir.2001) (trial court's violation of the Rule 32 notice requirement did not affect defendant's substantial rights, so as to merit plain error relief).

Neither the government nor Valenzuela received notice before the sentencing hearing concerning the adjustment for managing a criminal offense involving five or more people because the District Court was not contemplating such an enhancement before the hearing. The adjustment was requested by the government only after Valenzuela's testimony during the hearing confirmed that the criminal offense involved at least five people. The sentencing issue was simple and straightforward and did not involve additional material that could have been relied upon by Valenzuela, making it reasonable for the District Court to grant the enhancement with minimal notice.

Valenzuela does not argue that with more time he would have been able to refute evidence that the crime involved five or more people. More importantly, Valenzuela was given the requisite opportunity to comment on the enhancement at the hearing, and he was given advance notice that § 3B1.1 would be an issue. Therefore, we do not find that the District Court erred under the Rule 32 notice requirement, and, even if it did, such error in the instant case was harmless.

## IV.

For the reasons set forth above, the order of the District Court will be affirmed.