

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-15-2001

# United States v. Reynoso

Precedential or Non-Precedential:

Docket 00-2230

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"United States v. Reynoso" (2001). *2001 Decisions.* Paper 130.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/130

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 15, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-2230

UNITED STATES OF AMERICA

v.

WANDY REYNOSO, Appellant

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Crim. No. 97-cr-00380-1)
District Judge: Honorable Stewart Dalzell

Argued: March 9, 2001

Before: BECKER, Chief Judge, McKEE, and STAPLETON,
Circuit Judges.

(Filed: June 15, 2001)

        ROCCO C. CIPPARONE, JR.,
         ESQUIRE (ARGUED)
        203-205 Black Horse Pike
        Haddon Heights, NJ 08035

         Counsel for Appellant

        MICHAEL L. LEVY, ESQUIRE
        United States Attorney
        ROBERT A. ZAUZMER, ESQUIRE
        Assistant United States Attorney
        Chief of Appeals
        ALICIA S. RESNICOFF, ESQUIRE
          (ARGUED)
        Assistant United States Attorney
        615 Chestnut Street, Suite 1250
        Philadelphia, PA 19106

         Counsel for Appellee

OPINION OF THE COURT

BECKER, Chief Judge.

This appeal by defendant Wandy Reynoso pr esents a question of sentencing procedure. Reynoso pled guilty to conspiracy to distribute cocaine and to possession of cocaine with intent to distribute. Without af fording pre-hearing notice to either Reynoso or the Gover nment, the District Court appears to have sentenced Reynoso based in part on information that it learned during an earlier criminal trial in which Reynoso was not involved. Some of the information upon which the court r elied was not contained in either Reynoso's Presentence Investigation Report (PSI), or the Government's Sentencing Memorandum, nor was it brought out through Reynoso's testimony at the sentencing hearing.

Reynoso contends that the District Court was r equired to give him advance notice that he would be sentenced based, even in part, on information other than that contained in his PSI, and he submits that this error pr ejudiced him by affecting the District Court's judgment as to whether his sentencing range could be enhanced on the gr ounds that he was an "organizer, leader , manager, or supervisor" within the meaning of Section 3B1.1 of the United States Sentencing Guidelines. Because Reynoso never raised this claim before the District Court, we review only for plain error. We may therefor e set aside Reynoso's sentence only

2

if: (1) the District Court erred; (2) the court's error was clear or obvious; (3) Reynoso can show that the err or affected his substantial rights, i.e., that it prejudiced him; and (4) not correcting the error would seriously impair the fairness, integrity, or reputation of a judicial pr oceeding.

Following both Supreme Court jurisprudence and our own, we hold that before a sentencing court may rely on testimonial or other evidence from an earlier proceeding, it must afford fair notice to both defense counsel and the Government that it plans to do so. The court must identify the specific evidence upon which it expects to r ely and the purposes for which it intends to consider the evidence, and the notice must be provided sufficiently in advance so as to ensure that counsel for both sides have a r ealistic opportunity to obtain and review the relevant transcripts and to prepare a response ther eto. Because the District Court did not take these steps, we agree with Reynoso that it erred in sentencing him, thus meeting thefirst plain error requirement.

Nevertheless, we decline to set aside Reynoso's sentence because he has not met his burden of showing that the error affected his substantial rights. The District Court was unquestionably entitled to consider the testimony fr om the earlier trial in sentencing Reynoso; the only err or resulted from the lack of notice. The question is not, therefore, whether Reynoso's sentence would have been dif ferent had the court not considered the additional evidence; instead, Reynoso must show that the District Court would have imposed a lesser sentence had defense counsel been given the required notice. Because Reynoso has failed to point out any way in which his lawyer could have or would have rebutted or responded to the evidence fr om the prior proceeding had counsel been affor ded advance notice, we hold that Reynoso has failed to meet his bur den of showing prejudice. In light of this conclusion, we need not decide whether the error in this case was "clear" or "obvious" or whether failing to correct it would seriously impair the fairness, integrity, or reputation of a judicial proceeding.

3

I.

A.

In 1997, Nestora "Nettie" Salcedo and Juan Medina contacted the Drug Enforcement Administration (DEA), and offered to provide information regarding individuals involved in cocaine trafficking. The ensuing investigation focused on three men: Reynoso, Gregorio Espinal Mercado, and Juan Gonzalez. Starting on June 10, 1997, Salcedo and Medina had numerous telephone conversations with Reynoso and Mercado regarding the pur chase of a large amount of cocaine. These calls were recor ded by DEA agents. A controlled buy was arranged, and scheduled for June 20 in Philadelphia. The buyer was to be Miguel Morel, another DEA informant.

On that day, Reynoso, Mercado, and Gonzalez met with Salcedo and Medina in New York City. Reynoso informed Salcedo and Medina that Gonzalez was going to drive the car containing the drugs to Philadelphia, while the rest of them would take another car. Because Gonzalez did not know the way, Reynoso explained that Gonzalez would be following them. The convoy departed at approximately 5 p.m.

Around 6:30 p.m., Reynoso called Morel and told him to go to a hotel parking lot. This conversation was monitored by a DEA agent, who arranged to have law enfor cement personnel on the scene. The convoy eventually arrived, but Reynoso informed Morel that he did not want to conduct the transaction in the parking lot. After they agr eed to do the deal at a nearby apartment, Reynoso and the others got back into their cars and began to leave. They wer e arrested at that point. Law enforcement agents eventually found slightly over two kilograms of cocaine in the car driven by Gonzalez.

B.

Reynoso, Mercado, and Gonzalez were indicted in connection with these events. Reynoso and Mer cado jumped bail, and Mercado has never been captur ed.

4

Gonzalez was tried and convicted in the United States District Court for the Eastern District of Pennsylvania, and we affirmed his conviction on appeal. Reynoso was eventually apprehended in the New York City area and returned to Philadelphia. On December 22, 1999 he pled guilty before the same judge who had pr esided over the Gonzalez trial to one count of conspiracy to distribute (and to possess with intent to distribute) more than 500 grams of cocaine, in violation of 21 U.S.C. S 846, and one count of possession with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. S 841(a)(1).

The Probation Officer then prepar ed Reynoso's PSI. In its Sentencing Memorandum, the Government objected to two portions of the PSI. First, the Government submitted that the Probation Officer had erred by notfinding Reynoso eligible for a two-step Offense Level enhancement as "an organizer, leader, manager , or supervisor" of criminal activity pursuant to U.S.S.G. S 3B1.1(c). 1 Second, based on its claim that Reynoso had been an organizer , leader, manager, or supervisor, the Gover nment submitted that Reynoso was ineligible for a two-step Offense Level reduction pursuant to the "safety valve" contained in U.S.S.G. S 2D1.1(b)(6).2 In support of its assertions, the

_____

1. Section 3B1.1(c) provides for a two level increase "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than that described in (a) or (b)." Sections 3B1.1(a) and (b) apply only if the "criminal activity . . . involvedfive or more participants or was
otherwise extensive."

2. Section 2D1.1(b)(6) provides for a two-level reduction if the defendant's
Offense Level would otherwise be 26 or gr eater and if the defendant meets the criteria listed in U.S.S.G. S 5C1.2. Section 5C1.2 applies if

     (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

     (2) the defendant did not use violence or cr edible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

     (3) the offense did not result in death or serious bodily injury to any person;

5

Government attached eight exhibits: the handwritten notes

of an interview that an Assistant United States Attorney had conducted of Gonzalez, and transcripts of seven

telephone conversations between Reynoso and DEA informants. Reynoso sought downward departures on a

number of grounds, but did not otherwise object to the PSI.

Reynoso was sentenced on July 27, 2000. Defense counsel acknowledged at the start of the hearing that he

had reviewed the PSI and the Government's Sentencing Memorandum and accompanying exhibits. After hearing

testimony from Reynoso and oral argument from counsel, the District Court found that Reynoso had been "an

organizer, leader, manager , or supervisor" within the meaning of the Guidelines. Accordingly, the court decided that a two-level increase under S 3B1.1(c) was warranted,

and noted that, as a result, Reynoso was ineligible for a two-level decrease under S 2D1.1(b)(6). These findings set

Reynoso's Offense Level at 29, which, in conjunction with his Criminal History Category of I, created a sentencing range of 87 to 108 months. See U.S.S.G. Ch. 5 Pt. A. Had

Reynoso not received the organizer , leader, manager, or supervisor enhancement and thus been deemed eligible for

the two-level "safety valve" reduction, his Offense Level would have been 25 and his sentencing range would have been between 57 and 71 months. See id. The District Court

_____

        (4) the defendant was not an organizer , leader, manager, or
        supervisor of others in the offense, as determined under the
        sentencing guidelines and was not engaged in a continuing
        criminal enterprise, as defined in 21 U.S.C. S 848; and

        (5) not later than the time of the sentencing hearing, the
defendant
        has truthfully provided to the Government all information and
        evidence the defendant has concerning the of fense or offenses
        that were part of the same course of conduct or of a common
        scheme or plan . . . .

(emphasis added). The Government does not dispute that Reynoso met all but the fourth requirement.

eventually sentenced Reynoso to 90 months in prison, and he timely appealed that sentence.3

II.

Reynoso contends that in sentencing him the District Court relied in part on evidence that it had heard during the Gonzalez trial, and that the court's failur e to give him prior warning of its plans to do so was err or. To determine whether the first half of Reynoso's claim is true, we must carefully review the sentencing transcripts. The District Court indisputably consulted its personal notes fr om the Gonzalez trial in preparing for Reynoso's sentencing hearing. After dealing with some background matters, the court reported that it had read the Gover nment's Sentencing Memorandum, and stated: "I went back and pulled my file on Juan Gonzalez, reviewed my own notes. I didn't read the transcripts again. I looked at my notes, of course, the Gonzalez conviction was affirmed by the Court of Appeals."

The District Court also made several statements during the sentencing hearing that implied that it was r elying on information that it recalled from the Gonzalez trial, and that some of this information had not been r eflected in Reynoso's PSI, the exhibits attached to the Gover nment's Sentencing Memorandum, or Reynoso's testimony at the sentencing hearing. After remarking that the transcripts submitted by the Government fairly characterized the evidence that it had heard during the Gonzalez trial, the court stated that "[t]here was also a good deal more that [the Government] did not cite on this," i.e., whether Reynoso had been an organizer, leader , manager, or supervisor. Later, in response to defense counsel's argument that the Probation Officer had determined that Reynoso had not been an organizer , leader, manager, or supervisor, the court rejoined: "The Probation Department Officer, I don't believe sat through the Gonzalez case either."

_____

3. The District Court had jurisdiction pursuant to 18 U.S.C. S 3231. We have appellate jurisdiction under 28 U.S.C. S 1291 and 18 U.S.C. S 3742(a).

7

The strongest indication that the District Court was relying on its personal recollections fr om the Gonzalez trial came as the court pronounced sentence. The court stated:

> As I said at the beginning of this, I did have the advantage of sitting through the [Gonzalez] trial and indeed the Starks hearing and so forth, and became quite familiar with the transcripts. And one of the things that was notable about the entire pr ocess was both the testimony of Nestora Salcedo, Nettie and in the tapes themselves was the centrality of Mr. Reynoso and the very matter of fact business like approach in all the conversations about this, when obviously he didn't know he was being taped. Of course, his statement now, he is puffing, this is braggadocio, it seems an invitation to visit never, never land, that I won't take.

(emphasis added).4 Having r eviewed the transcripts, we agree with Reynoso that in sentencing him, the District Court appears to have relied in part on infor mation that it remembered from the Gonzalez trial, and that some of that information had not been included in Reynoso's PSI or the Government's Sentencing Memorandum or cover ed during Reynoso's testimony at the sentencing hearing.

III.

Reynoso contends that his sentence must be vacated because the District Court sentenced him based on its recollections from the Gonzalez trial without affording him a meaningful opportunity "to rebut [that] evidence or generally cast doubt upon its reliability." United States v. Linnear, 40 F.3d 215, 219 (1st Cir . 1994) (quotation marks and citations omitted). Reynoso's brief primarily characterizes this as a due process argument, and a

_____

4. As noted previously, the exhibits attached to the Government's Sentencing Memorandum consisted primarily of transcripts of telephone conversations between Reynoso and DEA informants. The Government argued that these conversations showed the Reynoso had been in a supervisory position with respect to Gonzalez. At sentencing, Reynoso contended that he had simply been attempting to convince the people to whom he had been talking that he was more significant than he really was.

8

defendant unquestionably has a due process right not to be sentenced based on inaccurate information. See, e.g., United States v. Nappi, 243 F.3d 758, 763 (3d Cir. 2001). Neither the Supreme Court nor this one have held that the Due Process Clause entitles a defendant to advance notice of the information upon which he or she will be sentenced or to comment meaningfully on that evidence. Courts have, however, found such rights created by Federal Rule of Criminal Procedure 32(c)(1)--which r equires that a sentencing court "afford counsel for the defendant and for the Government an opportunity to comment on . . . [all] matters relating to the appropriate sentence." See Burns v. United States, 501 U.S. 129 (1991); Nappi , 243 F.3d at 763. We will therefore decide this case based on Rule 32.

Our conclusion that the District Court's actions in this case did not comport with Rule 32(c)(1) is compelled by Burns and Nappi. In Bur ns, a district court had departed upward on a basis not mentioned in either the defendant's PSI or the Government's pre-sentencing submissions. Relying on Rule 32, the Supreme Court held that a sentencing court considering such a step must give both sides advance notice of its intentions and ensur e that the defendant has a meaningful opportunity to comment on the propriety of the contemplated departure. See 501 U.S. at 138-39. Though acknowledging that the express terms of the Rule contain no such requirement, the Court reasoned that pre-sentencing notice was necessary to pr otect a defendant's right to comment meaningfully on a matter related to the imposition of an appropriate sentence, and to ensure a "focused, adversarial resolution of the legal and factual issues relevant to fixing Guidelines sentencing." Id. at 136-37.

In Nappi, we held that a district court had violated Rule 32 by consulting and relying upon a PSI that had been prepared on the defendant in an earlier state court case without giving the defendant or the Government advance notice of its plans to do so. See 243 F .3d at 768. Observing that the logic employed in Burns applied with equal force to the situation before us, we held that befor e a district court may sentence a defendant based in part on infor mation contained in a document other than the defendant's federal

9

PSI, the court must ensure that the defendant has been afforded "a meaningful opportunity to address the information" contained in the other document. Id. at 764. To this end, we held that

> where . . . counsel are faced with having to review and address the contents of an additional document on which the Court intends to rely at sentencing, a meaningful opportunity to comment requir es the Court . . . to provide a copy of the document to counsel for the defendant and the government within a sufficient time prior to the sentencing hearing to affor d them with a meaningful opportunity to comment on it at sentencing and, depending on the document, pr epare a response or contest it.

Id.

The reasoning employed in Burns and Nappi applies fully to the situation before us. Were a court permitted to impose a sentence based in part on testimonial or other evidence from another proceeding not involving the defendant without giving the defendant and the Government advance notice, the defendant's right to comment meaningfully on all matters relevant to sentencing would be seriously compromised. Further, a lack of notice in such situations would significantly undermine the ability of both defense counsel and prosecutors to perfor m fully their adversarial, truth-testing roles during the sentencing hearing.

There is an additional reason for r equiring specific notice when a sentencing court expects to rely on information from another trial: the need to preserve the ability of appellate courts to review those sentences. Although "the scope of what a trial court may consider in deter mining an appropriate sentence is breathtakingly br oad," United States v. Simmonds, 235 F.3d 826, 837 (3d Cir. 2000), and though we must accept a sentencing court's factual findings unless they are clearly erroneous, see United States v. Reyes, 930 F.2d 310, 315 (3d Cir. 1991), we still have an obligation to ensure that those findings are supported by the evidence. Were a district court to rely on evidence from another proceeding without specifying the evidence upon which it was basing its findings, an appellate

10

court's task of determining whether the district court's findings were supported by the evidence would become difficult, if not impossible.

We therefore hold that befor e a sentencing court may rely on testimonial or other evidence from another proceeding, the court must notify the defendant and the Gover nment of its intent to do so and must identify with particularity the evidence upon which it expects to rely and for what purpose. For example, an appropriate notice would state that the court plans to rely upon the testimony of witnesses X and Y from the Z case in determining whether the defendant is eligible for a particular enhancement or reduction under the Guidelines, or wher e within a given Guideline range the defendant should be sentenced.

A sentencing court wishing to rely upon evidence from another proceeding must do two additional things. First, it must ensure that the counsel for both sides can obtain the relevant transcripts. Although we do not suggest that counsel before us was entitled to inspect the court's personal notes, we observe that it may be helpful in cases like this for the court to read the relevant portions of its notes into the record. Second, the court must give the required notice sufficiently far in advance so as to ensure that counsel have a meaningful opportunity to r eview the transcripts (or continue the sentencing so that they can do so), and, when appropriate, to formulate a response. As in Burns and Nappi, we decline to establish a hard-and-fast rule as to how much advance notice is requir ed; the answer will vary from case to case, depending on the complexity of the sentencing issue in dispute and the volume of additional material upon which the court intends to rely. Because the District Court did not comply with these requirements in sentencing Reynoso, we hold that it erred.

IV.

As we noted earlier, Reynoso did not object during the sentencing hearing or otherwise raise this claim before the District Court. Consequently, we review only for plain error. See United States v. Nappi, 243 F.3d 758, 760 (3d Cir. 2001). Following the Supreme Court's teachings in United

11

States v. Olano, 507 U.S. 725 (1993), we may thus set aside Reynoso's sentence only if: (1) the District Court erred; (2) its error was plain, i.e., the error was"clear" or "obvious;" (3) the error "affected [Reynoso's] substantial rights;" and (4) the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." Id. at 732, 734.

Even though the District Court erred, Reynoso cannot obtain relief without showing that the err or affected his substantial rights. We undertake what is essentially a harmless error analysis, except that Reynoso bears the burden of showing that he was prejudiced by the error rather than the Government having the obligation to show that he was not. See id. at 734.5  The dispositive question is whether Reynoso has shown that the error "af fected the outcome of the district court proceedings." Id.

In Nappi we emphasized the importance of car efully delineating the scope of a particular error before conducting an inquiry as to whether it prejudiced the defendant. There the district court had violated Rule 32(c)(1) by consulting and relying in part on a state PSI that had not been turned over to counsel for both sides prior to the sentencing hearing. We wrote:

> [I]t is important to keep in mind that the District Court could have relied on the state PSI if it had complied with Rule 32(c)(1). All the Court was requir ed to do was to disclose the state PSI to counsel prior to the sentencing hearing and to afford counsel an opportunity to comment on it before pronouncing its sentence. Thus, the relevant prejudice inquiry is whether, and how, defense counsel could have rebutted the contents of the report, and whether the Court's sentencing determinations would have been dif ferent if counsel had been given the opportunity to do so; it is not whether the Court would have imposed a lighter

_____

5. Reynoso suggests that the error her e was "structural" in nature, and thus not subject to harmless-error type analysis. See Neder v. United States, 527 U.S. 1, 7–8 (1999) (discussing the concept of structural error). He is mistaken. See Nappi, 243 F.3d at 770 (holding that violations of a defendant's right to advance notice of the information upon which he or she is to be sentenced do not cr eate structural error).

>         sentence . . . in the absence of consideration of the
>         state PSI.

Nappi, 243 F.3d at 771 n.12.

The same is true here. The District Court was unquestionably entitled to rely upon evidence from the Gonzalez trial in sentencing Reynoso. See, e.g., United States v. Simmonds, 235 F.3d 826, 837 (3d Cir. 2000). The question is not, therefore, as Reynoso seems to assume, whether the court could have or would have found him eligible for the organizer, leader , manager, or supervisor enhancement had it relied only upon Reynoso's PSI, the materials attached to the Government's Sentencing Memorandum, and Reynoso's testimony at the sentencing hearing. Instead, the question is whether Reynoso would have been found eligible for that enhancement had the District Court given counsel prior warning that it would be considering evidence from the Gonzalez trial and afforded defense counsel sufficient time to mount a meaningful challenge to that evidence.

The District Court's statements at sentencing make reasonably clear that the evidence from the Gonzalez trial upon which it relied was the testimony of Nestora Salcedo. See supra p. 9. We conclude that Reynoso has failed to show prejudice because his appellate brief makes no attempt to show that--given sufficient notice and ample time to prepare--his trial lawyer might have been able to refute or minimize the impact of Salcedo's testimony. We cannot presume prejudice--Reynoso must prove it. See Nappi, 243 F.3d at 770 ("[D]efense counsel has not provided any indication as to how, if given the proper notice and opportunity to comment, he could have challenged the information in the report in a manner that would have led the District Court to impose a lesser sentence within the Guideline range. Importantly, defense counsel has made no suggestion that the information in the r eport was inaccurate or false, or that the Court mischaracterized any of the information it cited from the state PSI."); Simmonds, 235 F.3d at 837 ("Simmonds does not contend that the information in his PSI or the PSI's of his co-defendants [which the District Court had consulted in sentencing him] was unreliable or untrustworthy."); United States v.

13

Knobloch, 131 F.3d 366, 371 (3d Cir . 1997) ("Appellate counsel has had ample opportunity since the sentencing hearing to review [the testimony of the witness from an earlier proceeding upon which the court had r elied in imposing sentence] and articulate some basis for believing it would have benefitted Knobloch in some way had the district court, sua sponte, order ed a continuance of the proceedings to afford defense counsel an opportunity for further proceedings. No relevant theory of prejudice has been advanced in the briefing before us.").

In view of the inability of Reynoso's appellate counsel to suggest something that trial counsel could have said or done had the proper notice been affor ded, he has failed to meet his burden of showing that the District Court's error affected his substantial rights. As a r esult, we need not decide whether the error was plain or whether it seriously affected the fairness, integrity, or public reputation of judicial proceedings.

The judgment of the District Court will be affir med.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

14