**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 11-2948
_____

UNITED STATES OF AMERICA

v.

BARI LYNN BERGER,
also known as Biealie Angel Mele
also known as  Angel Mele
also known as Bari Lynn Manahan
also known as Biealia Angel Mele
also known as Biealia Angel Deseria
also known as Bari Lynn Hurd
also known as Bari Lynn Elkind,

Bari Lynn Berger,
                              Appellant
_____

Appeal from the
United States District Court for the Eastern District of Pennsylvania.
District Judge: Honorable Cynthia M. Rufe
District Court No. 2:10-cr-00349
_____

Submitted Under Third Circuit LAR 34.1(a)
April 27, 2012
_____

BEFORE: GREENAWAY, JR., ROTH, and TASHIMA[*], *Circuit Judges*.

(Opinion Filed: August 3, 2012)

_____

OPINION OF THE COURT
_____

TASHIMA, *Circuit Judge*:

Defendant Bari Lynn Berger appeals from the sentence imposed by the District Court. Berger pled guilty to one count of mail fraud, 18 U.S.C. § 1341, and one count of wire fraud, 18 U.S.C. § 1343. These charges stem from a scheme whereby Berger and her criminal associate, Gerald Radomski, stole more than $1.7 million from friends, neighbors, and acquaintances. Radomski was prosecuted separately and also pled guilty. Berger contends that the District Court violated Fed. R. Crim. P. 32(i)(1)(C) when it failed to give her notice that it intended to rely on testimony from Radomski's prior sentencing hearing in determining her sentence.

We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Because the parties are familiar with the facts and prior proceedings, we set them forth only to the extent necessary to an understanding of our discussion of the issues.

_____

[*] Honorable A. Wallace Tashima, Senior Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

2

Berger and Radomski concocted a captivating story: Berger was said to be the illegitimate daughter of a wealthy business tycoon who had left her a $2 billion inheritance. But Berger could not inherit that money until she fulfilled several conditions in her father's will. Before Berger could receive the inheritance, she first had to pay her bills, establish a permanent home, and receive medical care. From January 2008 to January 2009, Berger and Radomski solicited money for the ostensible purpose of helping Berger meet these conditions, so that she could receive, and then share, her inheritance. They promised a 1000 to 1 return on investment.

After the scheme unraveled in March 2009, both Radomski and Berger were prosecuted and both pled guilty. Although the two cases were separately prosecuted, both cases were assigned to the same District Judge. Radomski's sentencing hearing was held on April 11, 2011 and Berger's sentencing hearing on July 11, 2011. Berger's Presentence Investigation Report ("PSR") calculated her advisory guideline range as 51-63 months. The government concedes that there was no mention of Radomski's sentencing proceedings in the PSR or in the sentencing memoranda submitted by the parties. Berger was sentenced to 60 months' imprisonment and three years of supervised release. She was also ordered to pay restitution of over $1.7 million.

Berger had requested a downward departure on the ground of diminished capacity, given her history of mental health issues. But the District Court placed little value on reports from Berger's doctors, because their diagnoses and opinions were based on Berger's self-reported symptoms. The District Court explained that Berger's "hazy memory and reluctance to give anybody information" indicated that "she is not a reliable relator." The District Court denied Berger's request for a downward departure.

The court was skeptical that Berger's doctors would have known enough, without reliable self-reports from Berger, to provide useful findings. The court asked "Could the doctors have any idea what I've just heard from two of the victims? Could they have any idea what Mr. Radomski said at his hearing?" The court also admonished Berger, stating that "[y]ou are the one that perpetrated this fraud along with Mr. Radomski, who found out that your weren't sick and you weren't an heiress and there weren't three judges in Orphan's Court in Philadelphia and some court employee was not extorting you." Berger contends that these statements by the court demonstrate that the court relied on information from Radomski's separate sentencing hearing in determining Berger's sentence.

Because Berger did not object to this alleged error during her sentencing hearing, the error was not preserved. Berger raises this issue for the first time in this appeal.

4

II.

This Court applies a plain error standard of review to unpreserved objections arising out of sentencing hearings. *United States v. Nappi*, 243 F.3d 758, 761 (3d Cir. 2001). Under this standard, "[we] may . . . set aside [Berger's] sentence only if: (1) the District Court erred; (2) the court's error was clear or obvious; (3) [Berger] can show that the error affected [her] substantial rights, i.e., that it prejudiced [her]; and (4) not correcting the error would seriously impair the fairness, integrity, or reputation of a judicial proceeding." *United States v. Reynoso*, 254 F.3d 467, 469 (3d Cir. 2001).

III.

In this case, we need not decide whether the District Court clearly erred, because Berger cannot show that any error affected her substantial rights.

A defendant establishes that an error affected her substantial rights by showing "that the District Court would have imposed a lesser sentence had defense counsel been given the required notice." *Id.* at 470. The defendant "bears the burden of demonstrating that he was prejudiced by the District Court's error." *Nappi*, 243 F.3d at 770.

Berger argues that, had she been given notice, she "would have entirely discredited Radomski's claim that Ms. Berger duped him into participating in the fraud." Berger says she would have called Radomski to the stand and confronted him with his sworn admission that he was behind the scheme. Berger argues that by pointing out these

5

inconsistencies to the court, she would have persuaded the court that she was not in charge of the scheme, and thus she would have received a lighter sentence.

Even if we accept that Berger would have called Radomski to the stand and thoroughly discredited him, Berger cannot show that this would have convinced the court to grant a downward departure or otherwise lessen her sentence. First, the District Court had already expressed skepticism about Radomski's testimony and accused him of habitual dishonesty. It is thus doubtful that the court placed much weight on Radomski's testimony in the first place, and Berger would not have been able to change the court's perception of Radomski by showing his inconsistent statements.

Second, the District Court never determined that Berger bore more responsibility for the fraud. In fact, the court's statements indicated that it viewed both Berger and Radomski as responsible for the crime. The court said: "You [Berger] are the one that perpetrated this fraud, along with Mr. Radomski," and that "[t]his is a rather extensive fraud scheme . . . The defendants, Mr. Radomski and Ms. Berger, are not the victims." Moreover, Berger and Radomski received the same sentence, 60 months' imprisonment and three years of supervised release. Thus, the record does not indicate that the District Court viewed Berger as more responsible than Radomski.

Third, Berger's argument takes the court's comments out of context. The court was explaining that it would not rely on reports from Berger's doctors, because those

reports were unreliable. And those reports were unreliable because Berger had not been forthcoming with her doctors. In addition, the doctors had "very little to use for evaluation except self-report by the defendant." The court emphasized that the doctors' reports were unreliable because Berger had been reluctant to give anybody information, and "doesn't tell anybody anything." The court's point, in mentioning Radomski's testimony, was not that it knew something material that the doctors did not (the content of Radomski's testimony), but rather that the doctors did not have any information on which to base their findings. Had Berger discredited Radomski, the Court still would have found the doctors' reports unhelpful, because Berger had not provided the doctors with the information they needed to make a reliable diagnosis.

But even if the court had found the doctors' reports helpful, there is little likelihood that they would have affected its denial of Berger's downward departure request. The court had already recognized Berger's "cognitive deficits." Even in light of those deficits, the court stated that "[t]here are countless fraud cases where defendants try to explain their detailed, intentional behavior as diminished capacity." The court denied the request for a downward departure because Berger "knew she wasn't working, she knew she was getting money and she was giving it away, and the money that she was getting, she had to play a role for." The court denied the downward departure because Berger knew that what she was doing was wrong. Radomski's testimony, which Berger

7

says she would have adduced, would not have changed this outcome.

Berger has not made a showing that, had the court given defense counsel notice, the District Court would have imposed a lesser sentence. *See United States v. Hart*, 273 F.3d 363, 380 (3d Cir. 2001) (explaining that it was not enough for the defendant to show "that [he] *may* have been able to *rebut* evidence," because he "must show that the District Court would have imposed a lesser sentence had defense counsel been given the required notice") (internal quotation marks omitted) (emphasis in the original). Thus, Berger has not shown that any error under Rule 32(i)(1)(C) affected her substantial rights.

We, therefore, will affirm the judgment and sentence of the District Court.