**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 12-1591

UNITED STATES,

Appellee,

v.

JORGE AVILÉS-SANTIAGO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José A. Fusté, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Selya, Circuit Judges.

Raymond L. Sánchez Maceira for appellant.
Alberto R. López Rocafort, Assistant United States Attorney, with Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Thomas F. Klumper, Assistant United States Attorney, on brief for appellee.

March 14, 2014

**LYNCH, <u>Chief Judge</u>**.  After being arrested as part of a forty-seven defendant drug conspiracy, defendant Jorge Avilés-Santiago pled guilty to one count of the indictment against him. His common-law wife and the mother of his two young children, Kimberly Meléndez-López, was also a defendant in the conspiracy, and also pled guilty to charges of possessing firearms in furtherance of the conspiracy.  She was sentenced by the same judge in a proceeding that occurred before Avilés-Santiago's sentencing hearing.

In this appeal, Avilés-Santiago argues that the district court committed procedural error when it used a conclusion it had drawn from Meléndez-López's sentencing to increase his sentence without giving him previous notice of this issue, and that the conclusion is not otherwise supported on this record.  We agree with Avilés-Santiago, and so vacate his sentence and remand his case for resentencing.

I.

Under his plea agreement, Avilés-Santiago pled guilty to Count One of the indictment, which charged him with conspiring to possess with intent to distribute one kilogram or more of heroin, five kilograms or more of cocaine, 280 grams or more of cocaine base, 100 or more kilograms of marijuana, and quantities of oxycodone and alprazolam, all within 1,000 feet of a public housing facility in Corazal, Puerto Rico.  <u>See</u> 21 U.S.C. §§ 841(a), 846,

860.  The agreement stipulated that Avilés-Santiago was responsible for between 500 grams and two kilograms of cocaine, resulting in a minimum sentence of five years and a maximum sentence of eighty years' imprisonment.  The parties agreed to recommend a 70-month sentence.  The court rejected that sentence.

Avilés-Santiago admitted that he joined the conspiracy in May 2010, acted as a seller, and he possessed and carried firearms in furtherance of the conspiracy.  His Presentence Investigation Report (PSR), to which neither party objected, shows that he had no prior criminal history, save for a juvenile offense which resulted in no criminal history points.  Importantly, it contained no information, or even any hint, that the defendant bore greater culpability on a theory he had induced his young wife into his criminal activity.

Meléndez-López's two older half-brothers, along with her stepfather and her mother, were also members of the drug conspiracy.  Indeed, a photograph, posted on Facebook, showed Avilés-Santiago and Meléndez-López each holding weapons in the company of her two older brothers.  She had pled guilty and, at age 21, been sentenced a month earlier before the same district judge.  The judge had shown her leniency and sentenced her to probation.

Avilés-Santiago is two years older than Meléndez-López, and he stated at sentencing that their relationship began when she was 15.  The court reasoned that Avilés-Santiago had "dragged her"

-3-

into the conspiracy, based on what the court had surmised from sentencing his wife. As said, no such theme appeared in the PSR. Nor had Avilés-Santiago or his counsel been present at Meléndez-López's sentencing hearing, nor was a transcript of that hearing provided to Avilés-Santiago.

When questioned by the court as to whether he had in fact "dragged" Meléndez-López into the drug conspiracy, Avilés-Santiago flatly denied the accusation, saying "[t]he truth is that I would do my own thing, and I never said anything to her. I would do my thing, and I never said anything about it to her." The court then asked about the photograph. Avilés-Santiago replied that the picture was taken at a party and that he had been drinking heavily at the time and "didn't even realize that that had happened."

The district court also spoke explicitly about Meléndez-López's sentencing hearing:

> THE COURT: You know that I sentenced Kimberly [Meléndez-López]; am I right?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And I determined when I sentenced Kimberly that she was a victim in a sense of your own wrongdoings. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You dragged her into this, and you're leaving behind two small kids, [ages] three and one. And in order -- for the sake of the kids, for the sake of the kids that are your kids, you know what I did? I gave her a probation sentence, exposing myself to a reversal, because I thought these kids would

> not be without a mother. There was no way that I could sleep that evening thinking that those two kids were going to be without a mother.
>
> THE DEFENDANT: I want to thank you for that from the bottom of my heart.

Defense counsel interjected that the evidence was that it was Meléndez-López's two older brothers who gave her the firearms.

Nonetheless, the court, based in part on its conclusion that Avilés-Santiago had dragged Meléndez-López into the conspiracy, sentenced Avilés-Santiago to 87 months, well above the 70-month sentence recommended by the parties under the plea agreement (but nevertheless within the sentencing guidelines range).

## II.

We review criminal sentences under the sentencing guidelines for abuse of discretion. Gall v. United States, 552 U.S. 38, 51 (2007). Our inquiry proceeds in two steps. First, we determine whether the district court committed any procedural error, and then, if we find none, we proceed to review the substantive reasonableness of the sentence for abuse of discretion. See United States v. King, 741 F.3d 305, 308 (1st Cir. 2014). Here, we need not proceed past the first step.

Avilés-Santiago argues that there was procedural error in that the court relied on conclusions drawn from another sentencing proceeding at which he was not present, and that he was

disadvantaged as a result.  At no point prior to Avilés-Santiago's sentencing was he or his counsel informed that his sentence stood to be sharply increased beyond the recommendation agreed to in the plea agreement on the basis of a co-defendant's sentencing hearing.

The only piece of evidence referenced by the district court in the defendant's sentencing was the photograph from Facebook in which both the defendant and Meléndez-López are holding guns.  Her brothers also appear in the photograph.  The photo itself falls far short of establishing, on its own, that Avilés-Santiago "dragged" Meléndez-López into anything, to say nothing of the possibility that Meléndez-López acted of her own choice, contrary to old gender stereotypes.

We need not test the proposition that it is an acceptable goal of sentencing to provide disincentive to individuals who induce the primary caretaker, here the mother, of young children, into criminal activity.  The core problem here was a lack of notice to the defendant: going into the hearing, neither he nor his counsel had any forewarning that the proceeding's outcome would turn on the district judge's already-established belief that Avilés-Santiago lured Meléndez-López into a pattern of criminal activity.  More notice is required before a defendant can be sentenced on the basis of a conclusion drawn from some other proceeding.  Cf. United States v. Reynoso, 254 F.3d 467, 469 (3d Cir. 2001) ("[W]e hold that before a sentencing court may rely on

-6-

testimonial or other evidence from an earlier proceeding, it must afford fair notice to both defense counsel and the Government that it plans to do so.").

Given the unusual circumstances of this case, we agree there was procedural error and it prejudiced the defendant.  We do not know if there is evidence to support the court's belief, but there is none present in this record, and a sentence based on an unsupported fact cannot stand.  See United States v. González-Castillo, 562 F.3d 80, 83 (1st Cir. 2009) ("[B]asing a substantial criminal sentence on a non-existent material fact threatens to compromise the fairness, integrity, or public reputation of the proceedings.").

## III.

The defendant's sentence is vacated, and the case is remanded for resentencing.  We take no view as to the duration of the sentence to be imposed on remand.