**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

——————————

No. 14-3032

——————————

UNITED STATES OF AMERICA

v.

BERNABE PALAZUELOS-MENDEZ,
                                          Appellant

——————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:12-cr-00093-002)
District Judge: Honorable Lawrence F. Stengel

——————————

Submitted Under Third Circuit L.A.R. 34.1(a)
September 10, 2015

——————————

Before: VANASKIE, SLOVITER, and RENDELL, *Circuit Judges*.

(Opinion Filed:   January 14, 2016)

——————————

OPINION[*]

——————————

VANASKIE, *Circuit Judge*.

    Appellant Bernabe Palazuelos-Mendez challenges the five-year term of supervised

release imposed as part of the sentence on his conviction for conspiring to distribute and

_____

    [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

possessing with intent to distribute five kilograms or more of cocaine. Finding no substantive or procedural error in the District Court's decision, we will affirm.

I.

In January and February of 2012, federal agents conducting a wiretap investigation intercepted a coded communication indicating that Palazuelos-Mendez, a citizen of Mexico, had arranged a shipment of 15 kilograms of cocaine from Los Angeles to Philadelphia. Upon arrival, the cocaine was to be delivered to Marvin and Alexis Velazquez, who would then sell it to their customers.

On February 2, Adrian Diaz, one of Palazuelos-Mendez's co-conspirators, began driving a tractor-trailer containing the 15 kilograms of cocaine to Philadelphia. That same day, Palazuelos-Mendez legally entered the United States in California on a six-month visa. He arrived in Philadelphia on February 3. The next day, February 4, he called Diaz and provided him with the address of a business owned by Brian Rodriguez, another co-conspirator, and explained that they would complete the exchange at that location.

On February 5, at about 5 a.m., Diaz arrived in Philadelphia and met Palazuelos-Mendez, Marvin and Alexis Velazquez, and Rodriquez. Diaz removed the 15 kilograms of cocaine from the tractor-trailer and gave it to Alexis, who placed 12 of the 15 kilograms in a secret compartment inside his Dodge Durango. The remaining three kilograms, which could not fit inside the compartment, were stored inside Rodriguez's business for later retrieval. The group then departed.

A few minutes later, federal and local law enforcement officers—who had observed this entire exchange—stopped the vehicles and arrested the occupants. Acting pursuant to a federal search warrant, they searched the Dodge Durango and located the secret compartment containing the 12 kilograms of cocaine. The remaining three kilograms, however, were never recovered.

On August 22, 2012, a grand jury returned a superseding indictment, charging Palazuelos-Mendez with one count of conspiracy to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. § 846, and one count of possession with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). On May 9, 2013, Palazuelos-Mendez entered into a written agreement to plead guilty to both charges.

Although Palazuelos-Mendez faced a mandatory minimum prison term of ten years as well as a mandatory term of supervised release of five years, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, he met the "safety valve" criteria set forth in 18 U.S.C. § 3553(f)(1)–(5). Accordingly, the District Court had the discretion to "impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence." Presentence Report ("PSR") ¶89. Pursuant to § 5D1.2(a)(1) of the United States Sentencing Guidelines ("the Guidelines"), Palazuelos-Mendez's advisory guideline range for supervised release was two to five years. Because Palazuelos-Mendez was a deportable alien, however, § 5D1.1(c) of the Guidelines indicated that a term of

3

supervised release should not be imposed.  Notably, neither Palazuelos-Mendez nor the Government brought § 5D1.1(c) of the Guidelines to the District Court's attention.

On February 19, 2014, the District Court conducted a sentencing hearing at which it adopted the PSR without objection.  Before imposing its sentence, the District Court explained that Palazuelos-Mendez "played a substantial and significant role in the transportation of an enormous amount of cocaine from Mexico to California to Pennsylvania." App. 106.  The District Court also noted that the sophistication of this scheme indicated that Palazuelos-Mendez "must have had some involvement with people who traffic[] in drugs before this, " *id*. 107, and "was trusted by people who deal in major quantities of cocaine," including "major international and interstate drug traffickers," *id*. 108.

Despite the serious nature of the crime, the District Court determined that a downward variance from the advisory guidelines imprisonment range of 70 to 87 months was warranted based on Palazuelos-Mendez's employment record, strong family and community support, and lack of any prior criminal history.  The District Court sentenced Palazuelos-Mendez to a term of imprisonment of 60 months plus a five-year term of supervised release.  Palazuelos-Mendez timely appealed, challenging only the supervised release aspect of his sentence.

II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  Because Palazuelos-

4

Mendez did not object to the PSR or at sentencing, we review the District Court's sentence for plain error. *United States v. Berger*, 689 F.3d 297, 299 (3d Cir. 2012). Under this standard, we may set aside Palazuelos-Mendez's term of supervised release "only if: (1) the District Court erred; (2) the court's error was clear or obvious; (3) [Palazuelos-Mendez] can show that the error affected his substantial rights, i.e., that it prejudiced him; and (4) not correcting the error would seriously impair the fairness, integrity, or reputation of a judicial proceeding." *United States v. Reynoso*, 254 F.3d 467, 469 (3d Cir. 2001). Because the District Court did not err, we will affirm.

Palazuelos-Mendez contends the District Court's error was clear or obvious because, in his view, § 5D1.1(c) of the Guidelines indicates that no term of supervised release should have been imposed in this case. Section 5D1.1(c), however, does nothing to limit the District Court's authority to impose a term of supervised release of two to five years as authorized by § 5D1.2(a)(1) of the Guidelines. To the contrary, the commentary for the application of § 5D1.1(c) indicates that "[t]he court should . . . consider imposing a term of supervised release on . . . a [deportable alien] if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case." U.S.S.G. § 5D1.1, cmt. n.5.

Here, our review of the record indicates the District Court acted in conformity with the commentary for the application of § 5D1.1(c), by giving ample consideration to the facts and circumstances of this case and fashioning an appropriate sentence after considering the serious nature of the crime, the large quantity of drugs involved,

5

Palazuelos-Mendez's role in arranging key aspects of the exchange, and his admitted prior involvement in other drug transactions. Because the District Court acted well within its discretion, we conclude that any potential error was not plain. *See United States v. Vazquez*, 271 F.3d 93, 107 (3d Cir. 2001) (en banc) (concluding "there was no plain error because the 5–year supervised release term was clearly within the range that the court was authorized to impose" notwithstanding the district court's incorrect conclusion that a five-year, rather than three-year, minimum term was required).

III.

For the aforementioned reasons, we will affirm the District Court's sentence.