**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-1851
_____

UNITED STATES OF AMERICA

v.

JUAN MONTAS, also known as Juan Miguel Montas,
also known as Juan Montas Hilario, also known as Juan
Hilario,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No. 3:23-cr-00507-001)
District Judge: Honorable Zahid N. Quraishi

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on June 10, 2025

Before:  KRAUSE, PORTER, and AMBRO, <u>Circuit Judges</u>

(Opinion filed July 30, 2025)

Timothy M. Shepherd
Office of Federal Public Defender
22 S Clinton Avenue
Station Plaza #4, 4th Floor
Trenton, NJ 08609

        Counsel for Appellant


Mark E. Coyne
Richard J. Ramsay
Office of United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102

        Counsel for Appellee

---

## OPINION OF THE COURT

---

AMBRO, <u>Circuit Judge</u>

This case presents a single issue: whether the District Court violated Federal Rule of Criminal Procedure 32 by relying on information at sentencing without giving prior notice to the defendant, Juan Montas. As he concedes, we review the issue for plain error because he did not raise this objection before the District Court. *United States v. Olano*, 507 U.S. 725, 732 (1993). Montas succeeds on the first two prongs of plain-error review—the District Court erred, and it was

2

clear. *Id.* at 732–34. His claim fails, however, at the third prong: prejudice. He cannot show that, with notice, the ultimate sentence would have been different. *See United States v. Reynoso*, 254 F.3d 467, 470 (3d Cir. 2001). We therefore affirm that sentence.

**I**

Montas is a citizen of the Dominican Republic and entered the United States as a toddler in 1996. In 2017, he was convicted and sentenced in the U.S. District Court for the District of New Jersey for conspiracy to distribute heroin. Deportation followed in 2020. However, Montas reentered sometime before April 2023, when New Jersey State Police arrested him for possession of a false driver's license, drug offenses, and money laundering. He pled guilty in the same Court in 2023 to illegally reentering the United States. At his 2024 sentencing for that offense, the District Court repeatedly referred to and relied on the Presentence Investigation Report (PSR) and hearing transcript from Montas's 2017 sentencing.

The District Judge began the sentencing by confirming that counsel had the relevant materials, such as the 2024 PSR, both sides' sentencing submissions, letters of support, and certificates that Montas had earned while incarcerated. But it then told counsel:

> In addition to that, I just want to let you know, I reviewed Mr. Montas' sentencing transcript from 2017 when he appeared before this Court before Judge Cecchi in Newark. And I reviewed the presentence report that was prepared at that time in advance of that sentencing hearing. So I did

3

> review those documents as well[,] and I wanted to make sure that you all know that I did review that.

App. 52. The Court did not warn counsel before the hearing that it would use those materials, nor did it provide them after making this statement. As Montas acknowledges, his counsel did not object. The District Judge then noted that Montas had

> already received a 30-month sentence from this Court, and that didn't deter him from coming back here illegally, that didn't deter him from having a fake passport from the Dominican Republic, and it doesn't convince me that — it's highly likely that regardless of what I do in my sentence today, he's going to come back again because that's what he's been doing. In 2017, let me tell you what he said to Judge Cecchi, because I think this is important.

App. 59. The Judge then quoted a statement Montas had made during his 2017 sentencing:

> I would like to apologize to the Court and to my family. And if I was to get another chance to be in society, I would take the most advantage of it and keep doing my best to be a better person and be there for my family, and especially my kids.

*Id*. The Judge commented that Montas "didn't do any of that. That was a lie, right?" *Id.* The follow-up was a rhetorical question: "[W]hy should I be convinced to give a downward variance to somebody who continues to come here illegally[?]"

4

App. 60. He also asked why Montas should get a lower sentence for the current offense than the 2017 offense:

> We gave him a 30-month sentence [in 2017], and he thumbed his nose at this Court. Here he is back again, and you're asking me to give him less time. Why would I do that? . . . [W]hy would I give him less time than what he got in 2017 when he told this Court, and I'm sure everyone believed him then, I'm not going to do this again, just give me another chance, I will do right by this Court, I will do right by my family, I will do right by the United States. He didn't do any of that.

App. 60–61. The prosecutor, who argued for a Guideline sentence of 18 to 24 months, responded by pointing to Montas's reentry plan for returning to the Dominican Republic. That new plan was formulated with his family and newlywed wife. The Judge suggested it was "not believable," positing that Montas's "history demonstrates that he doesn't have a plan other than, look, I will do whatever the Judge says today, I will come back and hopefully I won't be caught next time. That's what I think his history demonstrates because that's all he's done." App. 62.

When the defense began its presentation by emphasizing Montas's prior trauma, the Judge noted that "those were the same issues that have come before this Court and others before[,] and at some point it doesn't outweigh the danger that he continues to cause by poisoning the communities with these drugs." App. 63–64. And when defense counsel pointed out the stronger reentry plan, the

Judge asked, "Why wasn't this done before, the last time he was deported?" App. 65. The Judge also opined that Montas's family's plan was not reliable and assumed that they would falsely claim they did not know he was in the country illegally.

In imposing the sentence, the District Judge relied on the 2017 sentencing transcript, emphasizing that Montas was "before this Court several years ago saying what [he's] saying now, except for a slight twist, that [he has] a plan." App. 75. When discussing the mitigation arguments raised by defense counsel, the Judge noted:

> [M]any of those issues were raised to this Court in 2017. H[is] being a victim of a gunshot, his substance abuse issues, childhood issues, all were issues that were brought before this Court in 2017. And to recognize those then and to rely upon them now when [Montas] continue[s] to commit the same crimes, I will tell you I believe that those mitigating issues are significantly outweighed.

*Id*. The Court did not believe Montas because he

> made these statements to this Court before. . . . I can't pretend that I didn't review your words in 2017 saying: I'm not going to do this again, and here you are now. And you said those things then. And you might have meant them even then. I'm not even saying necessarily that you were lying to the Court in 2017. What I'm telling you is that regardless of whether you lied, maybe you even believed your words to be truthful, I can't count

6

on them anymore. So I hope you're right. But the record that I have before me with these several convictions for the very same crime, including when you have been deported and prior to your deportation, demonstrate to this Court that we can't rest on your words. That I can't believe the words you have [spoken].

App. 76.

The Judge pegged the 2024 sentence to the 2017 sentence: "I will tell you this, you're not getting a lower sentence than you got in 2017. There is nothing in this record that would make me think that you somehow have earned a lesser sentence now than you did in 2017 when you shouldn't be back here committing this crime again." App. 78. He sentenced Montas to 34 months' imprisonment and explained that he added a term of supervised release because he "believe[d] [Montas was] coming back." App. 78–79. He timely appealed.

**II**

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). To prevail on plain-error review, Montas must show (1) an error occurred, (2) it was clear or obvious, (3) it affected his substantial rights, and (4) it seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Olano*, 507 U.S. at 732–36.

7

**A**

We "interpret[] Federal Rule of Criminal Procedure 32 to require pre-hearing disclosure of documents on which a district court will rely at sentencing." *United States v. Smith*, 751 F.3d 107, 117 n.7 (3d Cir. 2014). Our Court has held that a district court violates Rule 32 when it fails to notify counsel before sentencing of its reliance on the defendant's state PSR, *United States v. Nappi*, 243 F.3d 758, 762–63 (3d Cir. 2001), or the transcript from a co-defendant's federal trial, *Reynoso*, 254 F.3d at 472–73. "[B]efore a sentencing court may rely on testimonial or other evidence from another proceeding, the court must notify the defendant and the Government of its intent to do so and must identify with particularity the evidence upon which it expects to rely and for what purpose." *Id.* at 474. The notice requirement is not just meant to put the defendant (who presumably remembers his past proceedings) on notice, but also counsel. *Nappi*, 243 F.3d at 764 ("Rule [32] requires that counsel for the defendant . . . be provided with a meaningful opportunity to address the information at issue." (emphasis omitted)).

*Nappi* construed an earlier version of Rule 32(c)(1). *Id.* at 762 n.2. Montas argues that it is still relevant precedent because a substantively similar rule is now found in Rule 32(i)(1)(B) and (C). Although Rule 32 continues "to require pre-hearing disclosure of documents on which a district court will rely at sentencing," *Smith*, 751 F.3d at 117 n.7, this Court has not yet determined whether this requirement is found in Rule 32(i)(1)(B) or (C), *see United States v. Ausburn*, 502 F.3d 313, 322 n.14 (3d Cir. 2007) (explaining that the "provisions of the Rule 32 cited in *Nappi* have since been renumbered and reorganized, but the current Rule is

substantively similar, for purposes of our discussion, to the version analyzed by *Nappi*," but not specifying a subsection of Rule 32); *United States v. Berger*, 689 F.3d 297, 298, 301 (3d Cir. 2012) (assuming without deciding that the relevant requirement comes from Rule 32(i)(1)(C)). Our Court has taken conflicting positions in nonprecedential opinions. *Compare, e.g.*, *United States v. Pena*, 407 F. App'x 589, 590 (3d Cir. 2011) (using (C)), *with United States v. Basralian*, 843 F. App'x 453, 457–58 (3d Cir. 2021) (using (B)); *United States v. Mark*, 757 F. App'x 208, 212 (3d Cir. 2018) (using (B)).

Today, we rely on (C) rather than (B). The former requires sentencing courts to "allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence." Fed. R. Crim. P. 32(i)(1)(C). This closely tracks the older version of Rule 32(c)(1) addressed by *Nappi*, which gave counsel the "opportunity to comment on . . . matters relating to the appropriate sentence." 243 F.3d at 762 (quoting the version of Rule 32(c)(1) in effect at the time of the decision) (omission in original). Section (B), on the other hand, requires a sentencing court to provide the parties a summary, either written or in camera, of "information excluded from the presentence report under Rule 32(d)(3) on which the court will rely in sentencing." Fed. R. Crim. P. 32(i)(1)(B). Rule 32(d)(3) excludes from the PSR confidential or diagnostic information or "any other information that, if disclosed, might result in physical or other harm to the defendant or others." Section (B) therefore has a more limited scope that is not relevant here.

The logic of *Nappi*, *Reynoso*, and Rule 32(i)(1)(C) applies here. The District Court relied on information from another proceeding—the 2017 sentencing. Montas's counsel

9

for the 2024 sentencing was not present for that earlier proceeding and therefore could not speak to it without advance notice. By failing to give Montas and his counsel advance notice of its reliance on the 2017 materials, the Court contravened Rule 32(i)(1)(C)'s mandate to "allow the parties' attorneys to comment on . . . matters relating to an appropriate sentence."[1]

Arguments to the contrary by the Government are unpersuasive. It emphasizes that the 2024 PSR relied on the 2017 PSR. It cannot say the same about the 2017 sentencing transcript. And even for the 2017 PSR, a citation by the Probation Office does not suffice for notice. Plus, the 2024 PSR merely stated that information from the 2017 PSR had been incorporated. If anything, that statement suggested that all relevant information from the 2017 PSR had already been included in the 2024 PSR, meaning counsel had no reason to expect that the District Court would examine and rely on the 2017 PSR independently.

The Government also argues that *Nappi* (1) applies only to information used to prove or disprove a fact relevant to the sentencing, (2) requires that the defendant had no knowledge that the Court had the information or would consider it, and (3) mandates that the information be aggravating. This reading

---

[1] In arguing that an error occurred, Montas also raised party-presentation concerns. In his view, the Court "acted as an additional advocate for the [G]overnment" rather than deciding solely the issues the parties presented. Opening Br. 24. We need not reach this contention because it was advanced only in service of the argument that the Court violated Rule 32, not as a separate issue on appeal.

contradicts our Court's statement that we "interpret[] Federal Rule of Criminal Procedure 32 to require pre-hearing disclosure of documents on which a district court will rely at sentencing." *Smith*, 751 F.3d at 117 n.7 (citing *Nappi*, 243 F.3d at 764). The Government characterizes this portion of *Smith* as unconsidered dicta. But even assuming that is true, the Government mischaracterizes *Nappi*. The first proposition—that the disclosure requirement applies only to information used to prove or disprove a relevant fact—seems to come not from *Nappi* but from an out-of-circuit case it cites, *United States v. Curran*, 926 F.2d 59, 63 (1st Cir. 1991). *Nappi* cited *Curran* in support of its notice-and-disclosure rule, not this limitation. *Nappi*, 243 F.3d at 764. The second proposition, that the defendant must have had no knowledge that the Court had or would consider the information, adds the word "must" to a quote from the factual summary in *Nappi*. Gov't Br. 24 (citing *Nappi*, 243 F.3d at 766). And the third, that the information must be aggravating, is not in *Nappi* at all. The Government did not point us to other cases adopting that rule, nor did we find any.

Even setting aside the mischaracterization of *Nappi*, the Government seems to argue that the 2017 transcript is not aggravating because Montas spoke for his own benefit at the time. That is unpersuasive. Presumably the relevant consideration would be whether it is aggravating for the 2024 sentencing, not the one in 2017. The Government also emphasizes that both PSRs are from the same Court and Probation Office and contends that Montas could have asked Probation for the 2017 PSR before the 2024 sentencing. Those assertions have no bearing on the District Court's obligation to notify counsel of the materials on which it plans to rely at sentencing. *Reynoso* requires the Court to identify the

information with particularity and an explanation of its purposes. 254 F.3d at 474.

## B

The Government follows up that because neither our Court nor the Supreme Court has applied Rule 32 to a defendant's own prior federal sentencing transcript or PSR, Montas's claim fails at the second plain-error prong because the error was neither clear nor obvious. We disagree. The rule depends not on the specific documents at issue but on whether the District Court gave notice of any document outside the record on which it planned to rely. *Nappi*, 243 F.3d at 764 (applying Rule 32 to the defendant's own PSR from state court because it was a "matter relating to the appropriate sentence" and "an additional document on which the Court intend[ed] to rely at sentencing"); *Reynoso*, 254 F.3d at 474 ("[B]efore a sentencing court may rely on testimonial or other evidence from another proceeding, the court must notify the defendant and the Government of its intent to do so and must identify with particularity the evidence upon which it expects to rely and for what purpose."). The error here was clear under *Nappi* and *Reynoso*.

## C

A defendant succeeds on the third prong of plain-error review if the error prejudiced him, meaning the outcome of the proceeding would have been different but for the error. *Nappi*, 243 F.3d at 762, 770. Montas must establish that "the District Court would have imposed a lesser sentence had defense counsel been given the required notice." *Reynoso*, 254 F.3d at 470. The inquiry focuses on what would have happened with

12

proper notice to counsel, not what would have happened if the Court had never relied on the outside materials. *Id.* On this prong, Montas comes up short.[2]

He first argues that the District Court misinterpreted his statement that he would "take the most advantage of" a second chance and do his "best to be a better person" as a promise not to commit more crimes. App. 59; Supp. App. 12. We are not persuaded. Even if that were a misinterpretation, we cannot conclude that the Court's sentence would have been lower if it understood that he was not promising to stop committing crimes.

Montas next contends that, with notice, he could have better explained why his family support improved between 2017 and 2024: at the time of the 2024 sentencing, he had recently married. But the District Court considered that information and found it unpersuasive. Notice would not have changed the argument raised; counsel made this point even without notice. Nor would it have changed the outcome considering that the Court gave the recent marriage little weight in its analysis.

Montas also asserts that the District Court misconstrued his immigration history, appearing to believe he had illegally reentered the United States more than once. He is right that it described him as "somebody who continues to come here illegally," App. 60, and as committing "this crime every time [he] come[s] back to the United States," App. 74. Montas first entered the United States as a minor and was previously

_____

[2] Because his claim fails at the third prong of plain-error review, we need not reach the fourth.

13

deported only once, making this his first illegal reentry. The Court signaled that it understood this during parts of the sentencing. Regardless whether it got this fact right, notice of its reliance on the 2017 materials would not have resolved the problem. The 2024 PSR, of which everyone indisputably had notice, makes clear that this is Montas's first illegal reentry. Montas's appellate counsel fails to explain how notice of the 2017 materials would have helped sentencing counsel respond to the potential error, let alone how it would have changed the sentence.

Montas raises several other prejudice arguments, but they consider the wrong counterfactual. As explained above, we ask whether the sentence would have changed if counsel had notice of the Court's reliance on the 2017 materials. Several of Montas's arguments seem to rely on a different scenario, one in which the Court could not rely on the 2017 materials at all. These include its:

- discussing Montas's reliability based on the 2017 transcript;

- pegging the 2024 sentence to the 2017 sentence based in part on Montas's statements at the 2017 hearing; and

- giving little weight to the defense's mitigation factors because they were also raised in 2017.

The defense does not argue that notice would have changed the Court's sentence based on these points, nor does it argue that it could have rebutted the Court's conclusions about Montas's reliability or the mitigation factors. In short, his claim fails at the third prong because he cannot demonstrate that "the

14

District Court would have imposed a lesser sentence had defense counsel been given the required notice." *Reynoso*, 254 F.3d at 470.

*  *  *

By relying at Montas's sentencing in 2024 on a PSR and transcript from his 2017 federal sentencing, without advance notice to him or his counsel of its reliance, the District Court erred under Rule 32(i)(1)(C). Yet Montas cannot show that, with notice, his sentence would have been different. On plain-error review, his claim thus fails at the prejudice prong, and we affirm his sentence.

15